87 315
113 576

GEORGE ORTH v. WESLEY M. FEATHERLY.

*Libel and slander—Words actionable per se—Mitigation of damages—Error without prejudice.*

1. In a libel suit it appeared that the article complained of was libelous *per se*, and the malice of the defendant plainly appeared from the face of the publication. And it is held that the failure of the court to instruct the jury to consider, as affecting the question of exemplary damages, the claim of the defendant, supported by his testimony, that he was informed prior to publishing the article that the charges therein made were true, as showing his good faith, was non-prejudicial error; it appearing that the jury were instructed to consider the mitigating circumstances in the case, which were only shown by said testimony.

2. A publication alleging that a member of the board of supervisors charged a co-member during a meeting of the board with being a liar, a thief, and a perjurer, and stated that he could prove it, is libelous *per se*.

3. Where actual malice is shown in an action for slander or libel, the jury may always give punitive damages; citing *Newman v. Stein*, 75 Mich. 407.

Error to Iosco. (Kelley, J.) Argued June 19, 1891. Decided July 28, 1891.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*M'Cutcheon & Elliott*, for appellant.

*Henry & Cornville*, for plaintiff.

LONG, J. The plaintiff is a merchant carrying on a general business in the towns of Au Sable, Oscoda, and St. Ignace. The defendant is the proprietor and publisher of the Lakeside Monitor, published at Au Sable.

This is an action of libel, brought upon the following article published in defendant's paper, July 9, 1887:

## "GEORGE ORTH IN DEEP WATER.

"In the Monitor of last week there were propounded to George Orth several very pertinent questions, among which was one wherein Orth was asked if he, as supervisor of the poor, ever furnished supplies to the inmates of the Shore Hospital, and charged them up to the county at two prices. At a meeting of the board of supervisors, Wednesday, Supervisor B. F. Smith introduced a resolution, to which was attached the Monitor's article referred to, asking that the board bounce Orth on general principles. Some of the members advocated summary disposal of the services of Orth in telling language; among them being Scott Buell, who most emphatically stated that Orth was a liar, a thief, and a perjurer, and that he could prove every word he said. The original resolution was amended so as to allow Orth to produce witnesses that these matters were false, if he could do so, and in default of such proof the board propose to graduate him with honors at their next meeting. We are told that the board have documentary evidence that all these things are true. People who live in glass houses should not throw stones. Give us another libel suit, Mr. Orth, and we will open out another fusilade of canister and grape which we have in reserve for your especial benefit."

From the record it appears that this was only one of the many articles published in the Lakeside Monitor by the defendant in reference to Mr. Orth.

The resolution of the board of supervisors to which this article refers is as follows:

"Whereas, it has been charged in a newspaper published in this county that George Orth, as superintendent of the poor, has been guilty of official misconduct, to wit, furnishing patients at Weir's Hospital with clothing, boots, and shoes from his store, and charging the county two or three prices for the same: Therefore, be it—

"Resolved, that the said Orth be required to appear before this board at its next session, and answer said charge, and that the chairman cause by subpœna the publisher of said paper to appear before this board to

substantiate said charge, and the sheriff of this county serve a true copy on the said Orth to appear before this board, and answer said charge, or other matters relating to his official conduct."

After the publication of the article complained of, the board of supervisors had a meeting, investigating the charges made, and fully exonerated Mr. Orth from the charges by the unanimous vote of the board.

The defendant pleaded the general issue, with notice of special matters of defense:

· 1. That, in so far as the article purported to give the contents of the resolution of the board of supervisors, it was substantially true.

2. That if Orth's reputation for truth and veracity had suffered, and if he was suspected of false swearing and lying, it arose from his own acts in testifying in the Weir trial.

3. That Buell had in fact made the statements stated in the article, and that, if the article conveyed any erroneous impression that the statements of · Buell were made on the board of supervisors, it was an honest mistake of fact in naming the place where Buell made the statements.

4. That the Monitor was a public newspaper, and that the article was published for the purpose of informing the public of what took place on the board of supervisors.

Upon the trial of the cause in the Iosco circuit, the plaintiff had verdict and judgment for $800. Defendant brings error. Thirty-seven errors are assigned. We shall only consider those which are discussed in the brief of counsel for the appellant.

The defendant's first contention is that the article is not libelous *per se,* and that the court was in error in so directing the jury. The court charged the jury on that question as follows:

"I charge you, as the law in this case, that the publication in question is defamatory and libelous, and action-

able in itself upon its face. It is what is termed 'actionable *per se.*' Whenever a person, in printing or writing, charges another with a crime,—charges another with conduct which imputes the commission of a crime,—moral turpitude,—the law provides that such publications are actionable, and that malice will be inferred from the publication itself; and in the first instance no express malice—no actual malice—need be shown in order to entitle the party to redress or damages."

The court was not in error in this charge. The article is libelous *per se.* It states that Scott Buell charged the plaintiff with being a liar, a thief, and a perjurer before the board of supervisors at their meeting, and that he could prove every word he said. It turned out upon the trial that Scott Buell made no such statement before the board of supervisors, and the article in that respect was wholly false.

Defendant, however, testified upon the trial that, before the publication declared upon, Buell had told him that Orth was a liar, a thief, and a perjurer, and would steal everything he could lay his hands on, and that before the publication he (defendant) was in Orth's store, and saw him charge upon his books to the hospital goods which had never been purchased. He testified upon cross-examination, however, that he was unable to state whether it was $1 or $20, neither could he give the date of the month nor the year when this took place; that he never said anything about this transaction until after the time when Orth became a witness in the Weir trial. Defendant also testified that it came to him from a county officer, one Charles Marvin, and that he understood from Marvin that Buell used this language on the board of supervisors. Defendant testified upon that subject as follows:

"Charles Marvin said he had been down to the meeting of the board of supervisors, and 'they gave Orth the devil down there yesterday,' or 'raised the devil with

Orth.' I asked, 'What did they do?' 'Well,' he says, 'they got that article in your last week's paper, and Smith had a resolution which he attached to it asking for an investigation.' Buell was right there (that is what he gave me to understand), and he says, 'Buell said he is a damn liar, a thief, and a perjurer, and that he could prove every word he said.' Buell had often before that time, upon different occasions, told me the same thing, without any solicitation whatever."

This testimony was offered for the purpose of mitigating damages. Under this testimony, it was claimed by counsel for defendant that the article published could only be regarded as a repetition of statements made by others which defendant believed to be true, and that he could not be held to the same measure of responsibility as though he had originated the statements set out in the article, though such statements may have been false in fact. The court charged the jury upon that question as follows:

"I also instruct you that it is no defense and no justification or excuse that he may have heard that such reports had been made by others. The repetition of such a charge, put into permanent form, to be circulated through the medium of the public press, even though it may have been said by somebody else, would constitute a libel; and it can afford no protection to the publisher of a newspaper, or any other person who prints or writes grave charges,—charges which, from their very nature must tend to injure the character and standing of another, and the property and business of another,—that some other person may have made the charge."

The court was not in error in stating to the jury that the fact that the defendant, under his claim, was merely repeating what he had been advised had been said by others, could not be urged by him as justification or excuse, as a repetition of the slander could not be justified on the ground that some other person had originated the slanderous statement. The jury may, however, have

understood from this part of the charge that they had no right to take into consideration the fact that Buell had used this language, or that Marvin had so stated to the defendant, or that the defendant may have believed that Buell had so stated before the board of supervisors, and that Marvin had communicated that fact to him before the publication of the article, when they came to consider the question of damages. It was proper matter to go ·before the jury upon the question of damages, but the charge of the court entirely excluded it from their consideration, even upon that branch of the defense, as the court stated to them that it could not be used as a defense. As a part of the defense, the defendant claimed to reduce the amount of the plaintiff's damages, and offered the proof for this purpose. The court directed the jury that the only fact for their consideration was one of damages, and that the plaintiff was entitled to recover actual damages; and, if they found that there was actual malice entertained towards the person of the plaintiff in publishing the defamatory statement, they should add to the elements of actual damages such amount as they might think reasonable and right for injured feelings,—for the shame and disgrace he may have endured in consequence of these false statements.

It was not contended upon the part of the defendant, upon the trial, that Buell made these statements before the board of supervisors, but that at the time of the writing of the article and its publication he believed from what Marvin said to him, and from statements which he had heard Buell make before that time, that Buell did make the statements before the board as claimed in the article published. The court should have directed the jury, upon the question of exemplary damages, that they should take into consideration the claim made by defendant that he was advised by Marvin before the article was

published that Buell had so made the statements before the board, as such facts would have a bearing in determining the malice of defendant towards the plaintiff in the publication of the article, which is one of the elements to be taken into consideration in determining the amount of exemplary damages.

The article was libelous *per se,* and the plaintiff was entitled to recover actual damages. In addition to this, he was entitled to recover punitive damages, if the facts proved establish express and wanton malice. Where actual malice is shown in an action for slander or libel, the jury may always give punitive damages. *Newman v. Stein,* 75 Mich. 407; *Knight v. Foster,* 39 N. H. 576; *Guard v. Risk,* 11 Ind. 156; *Armstrong v. Pierson,* 8 Iowa, 29; *Daly v. Van Benthuysen,* 3 La. Ann. 69. The amount of such exemplary damages must rest largely in the discretion of the jury, under proper instructions from the court, dependent upon the facts of each particular case. It is unquestionably true that the jury would naturally give to the plaintiff a larger amount of exemplary damages if they believed the article to have originated with the defendant, and the article to be false in fact, than they would give if it was shown that the defendant was merely repeating the words of another which he believed to be true. In order to recover exemplary damages, it was necessary for the plaintiff to show that the defendant was actuated by malice in its publication. Such facts could be shown by circumstances, as well as by direct proof. To rebut this, the defendant had the right to show the circumstances under which the article was published, that he believed it to be true, and that the facts upon which the article was based were given to him by another before the publication.

In the case of *Burt v. McBain,* 29 Mich. 264, it appeared

that a witness, called for the prosecution to show the speaking of the words, testified upon cross-examination that she had previously heard the same story from others. On re-examination she was asked to state from whom. This was objected to, but allowed. It was said by this Court that this testimony was properly allowed in mitigation of damages.

As a rule, unless the matter complained of be privileged, the motive or intention of the speaker or writer is immaterial to the right of action. The law looks only at the words employed, and their effect on the plaintiff's reputation; but in all cases the absence of malice, though it may not be a bar to the action, may yet have a material effect in reducing the damages. In *Hinkle v. Davenport,* 38 Iowa, 355, it was held that proof was properly admissible that defendant repeated, and did not originate, the alleged slander, and that the jury might consider it in mitigation of damages, but not in justification. As a general rule, in actions of slander and libel the defendant may mitigate damages by showing any circumstances which tend to disprove malice. *Storey v. Early,* 86 Ill. 461; *Galloway v. Courtney,* 10 Rich. 414; *Wozelka v. Hettrick,* 93 N. C. 10; *Morris v. Lachman,* 68 Cal. 109.

Defendant's counsel also claim that the court was in error in submitting to the jury the question of damages plaintiff sustained to his business by reason of the publication of the libelous article. There was no error in this. The declaration counted upon such injury, and all the proofs tended to show a falling off in the plaintiff's business by reason of the publication of the article in question.

Some claim is also made that the court was in error in

the reception and rejection of evidence. We find no error in this part of the case.

There was no error in the refusal of the court to give defendant's requests in his charge to the jury, and in the giving of such of the plaintiff's requests as were given.

The only error we find in the whole record relates to the charge of the court which excluded from the jury, in determining the plaintiff's damages, the fact that the defendant claimed to have acted in good faith in the publication of the article, and upon a state of facts which he believed at the time to be true. For this reason the judgment should be reversed, and a new trial ordered.

GRANT, J. We think the malice in this case is so apparent upon the face of the publications that the error pointed out by our Brother LONG was without prejudice. The judge did instruct the jury that they should consider the mitigating circumstances. The testimony as to good faith was admitted, and constituted the only mitigating circumstances.

Judgment is affirmed.

CHAMPLIN, C. J., MORSE and McGRATH, JJ., concurred with GRANT, J.