PEISNER v THE DETROIT FREE PRESS, INC

Docket No. 66849. Argued June 6, 1984 (Calendar No. 2).—Decided
December 28, 1984. Released January 29, 1985. Rehearing de-
nied *post,* 1202.

Balfour Peisner and Nora S. Peisner brought an action in the
Wayne Circuit Court against The Detroit Free Press, Inc., and
Louis Heldman, a reporter for the Free Press, alleging libel
arising from an article written by Heldman that appeared in
the Free Press and seeking actual and punitive damages.
Verdicts against the defendants were returned by the jury, and
the court, Harold Hood, J., entered judgment. The Court of
Appeals, Deming, J. (V. J. Brennan, P.J., concurring, and Bron-
son, J., concurring in the result only), affirmed with respect to
the defendants' liability, but reversed with respect to the award
of damages (Docket No. 78-4476). The plaintiffs appeal.

In an opinion by Justice Boyle, joined by Chief Justice
Williams, and Justices Kavanagh, Ryan, Brickley, and Cav-
anagh, the Supreme Court *held:*

Exemplary and punitive damages in a libel action are purely
compensatory in nature and can be awarded only where a
plaintiff has sought retraction prior to initiating the action and
has allowed a reasonable time for its publication and where it
is shown that the defendant acted with common-law malice.

1. In a libel action, a plaintiff is entitled to recover actual
damages to property, business, trade, profession, occupation, or
feelings. Exemplary and punitive damages may be recovered
only where, before instituting an action, the plaintiff requests
that a retraction be made and allows a reasonable time for its
publication. Exemplary damages for libel are merely a species
of actual damages, awarded to compensate the plaintiff for the
increased injury to feelings directly attributable to the defen-
dant's fault or malice in publishing the libel. The categories are

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 50 Am Jur 2d, Libel and Slander §§ 186 *et seq.,* 349 *et seq.*
Who is protected by statute restricting recovery unless retraction is
demanded. 84 ALR3d 1249.
Validity, construction, and application of statute limiting damages
recoverable for defamation. 13 ALR2d 277.
[2] 50 Am Jur 2d, Libel and Slander § 370.

independent, however, actual damages providing compensation for injured feelings attributable to the fact and effect of the libel and exemplary and punitive damages providing additional compensation for the incremental injury to feelings attributable to the sense of indignation and outrage occasioned by the defendant's bad faith or ill will in publishing the libel. Exemplary and punitive damages pick up where actual damages leave off, compensating the plaintiff for injured feelings attributable solely to egregious conduct by the defendant. Thus, such damages cannot be awarded without a finding that the defendant acted with common-law malice, *i.e.,* with ill will or bad faith, in publishing the libel.

2. In this case, the plaintiffs were required to prove actual malice—knowledge of falsity or reckless disregard for the truth —to defeat the defendants' qualified privilege to report on matters of public interest and to establish liability for actual damages. To establish liability for exemplary and punitive damages, the plaintiffs were required to show that they had requested a retraction according to the procedure in the libel statute and that the defendants acted with common-law malice in publishing the libel. The jury instructions properly expressed the distinction between the categories of damages. However, they did not provide proper instruction on the necessity of finding common-law malice as a prerequisite to an award of exemplary and punitive damages, requiring remand to determine whether common-law malice existed on the part of either defendant and whether any incremental injury to feelings attributable to such malice existed that would increase the award of actual damages.

Justice Levin concurred in the result only.

Affirmed in part.

104 Mich App 59; 304 NW2d 814 (1981) affirmed in part.

1. LIBEL AND SLANDER — EXEMPLARY AND PUNITIVE DAMAGES.

Exemplary and punitive damages in a libel action are purely compensatory in nature and can be awarded only where a plaintiff has sought retraction prior to initiating the action and has allowed a reasonable time for its publication and where it is shown that the defendant acted with common-law malice (MCL 600.2911; MSA 27A.2911).

2. LIBEL AND SLANDER — ACTUAL DAMAGES — EXEMPLARY AND PUNITIVE DAMAGES — COMMON-LAW MALICE.

Actual damages in a libel action compensate the plaintiff for injured feelings attributable to the fact and effect of the libel; exemplary and punitive damages are a species of actual dam-

ages that compensate the plaintiff for incremental injury to feelings attributable to the sense of indignation and outrage occasioned by the defendant's common-law malice, *i.e.,* bad faith or ill will, in publishing the libel (MCL 600.2911; MSA 27A.2911).

*Balfour Peisner* for the plaintiffs.

*Honigman, Miller, Schwartz & Cohn* (by *Herschel P. Fink* and *Brian D. Figot)* for the defendants.

BOYLE, J. We granted leave in this case to consider whether an award of "exemplary and punitive" damages under Michigan's libel statute impermissibly duplicates an award of actual damages for injury to feelings arising from the libel. In addressing that question, we reaffirm that "exemplary and punitive" damages under the libel statute are purely compensatory in nature, but hold that their availability requires a showing of common-law malice. We further hold that, under proper instruction, a jury may award exemplary and punitive damages that are not duplicative of actual damages for injury to feelings. Because exemplary and punitive damages were awarded in this case in the absence of a proper malice instruction, we affirm the Court of Appeals judgment remanding for a new trial on damages, but modify that decision in accordance with the principles set forth below.

I

Plaintiff Balfour Peisner, an attorney, brought this action against defendants The Detroit Free Press and its reporter Louis Heldman claiming actual and punitive damages for libel arising from the publication of an article written by Heldman that appeared in the Free Press in November,

1973.[1] Following two pretrial appeals to the Court of Appeals on issues not relevant here,[2] the case was tried before a jury and a verdict returned against Heldman and the Free Press jointly in the amount of $52,000 actual damages and against the Free Press alone for $100,000 "additional" damages.[3] The Free Press' motion for a new trial and remittitur was denied.

On appeal, the Court of Appeals rejected the Free Press' arguments relative to liability, but remanded for a new trial on damages on the basis of a finding that the damage instructions given permitted the jury to compensate Peisner twice for injury to feelings, as an element of both "actual" and "exemplary and punitive" damages. The Court found that such a double recovery of mental injury damages was "a form of punishment which is not permitted in this state," requiring a redetermination of damages to compensate Peisner only once for injury to feelings. *Peisner v Detroit Free Press, Inc,* 104 Mich App 59, 71; 304 NW2d 814 (1981). Judge V. J. BRENNAN concurred in a separate opinion expressing his concern with the confusion

[1] Peisner's wife joined in the action with a derivative claim not at issue in this appeal. Unless otherwise specified, the name "Peisner" in this opinion refers to Balfour Peisner alone and the name "Free Press" refers to both the newspaper and its reporter Heldman.

[2] *Peisner v Detroit Free Press, Inc,* 68 Mich App 360; 242 NW2d 775 (1976), *lv den* 399 Mich 825 (1977); *Peisner v Detroit Free Press, Inc,* 82 Mich App 153; 266 NW2d 693 (1978).

[3] Peisner's wife was awarded $5,000 in actual damages against both defendants. The trial judge, Wayne Circuit Judge Harold Hood, denominated the "exemplary and punitive" damage component as "additional damages" in the jury charge in order to eliminate the obvious connotation of punishment in the term "punitive":

"Now, members of the jury, the Michigan statute which I have just quoted mentions punitive damages. Now, under our law—and I want to correct any possible misimpressions—under our law the purpose of these 'punitive damages' is not to punish the Defendant[s] for their misdeeds. The purpose of these damages, which I prefer to refer to as additional damages rather than punitive damages, is to compensate the Plaintiffs for injuries suffered by them because of the Defendants' actions."

arising from use of the term "punitive" to describe a purely compensatory element of damages. *Id.,* 71-72.[4]

Peisner appealed to this Court, requesting, *inter alia,* that we rule true punitive (punishment-type) damages to be recoverable under the Michigan libel statute and that the Court of Appeals remand order be modified accordingly. No cross-appeal as to liability was taken by the Free Press.[5]

In short, we reject Peisner's invitation to depart from an established rule precluding true punishment-type damages in libel cases. We find however that common-law malice is a prerequisite—unsatisfied in this case—to recovery of "exemplary and punitive" damages for libel. We affirm the judgment of the Court of Appeals, but remand for a new trial as to punitive and exemplary damages only.

## II

The starting point in our analysis is § 2 of the Michigan libel statute, MCL 600.2911; MSA 27A.2911, which in separate subsections provides

---

[4] Judge BRENNAN suggests the term "punitive" be removed from our legal parlance in recognition of the longstanding disfavor of punishment-type damages in Michigan jurisprudence. 104 Mich App 72. While we share Judge BRENNAN's desire to eliminate an unnecessary source of confusion for juries already saddled with complex and unfamiliar legal rules, and join him in urging the Legislature to avoid unnecessary uses of that term, our opinion today should not be interpreted to foreclose the Legislature's authority to prescribe the availability of true "punitive" (*i.e.,* punishment-type) damages either through express statutory language acknowledging the punishment rationale or simply by permitting awards, for example, of attorney fees or treble damages.

[5] We disapprove of the Free Press' attempt to have this Court review its arguments as to liability in the absence of a cross-appeal. Our appellate procedure is designed to focus the issues on appeal and provide the parties with an opportunity to fully brief and argue *those* issues. This purpose is frustrated by the injection of new issues in the answering brief. Appellees wishing to challenge rulings adverse to them should do so directly by way of a cross-appeal.

for the recovery of "actual" damages and "exemplary and punitive" damages:

"(2)(a) Except as provided in (b), in actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he has suffered in respect to his property, business, trade, profession, occupation, or feelings.

"(b) Exemplary and punitive damages shall not be recovered in actions for libel unless the plaintiff, before instituting his action, gives notice to the defendant to publish a retraction and allows a reasonable time to do so, and proof of the publication or correction shall be admissible in evidence under a denial on the question of the good faith of the defendant, and in mitigation and reduction of exemplary or punitive damages. The retraction shall be published in the same size type, in the same editions and as far as practicable, in substantially the same position as the original libel."

Subsection (a) defines "actual damages" to include damages suffered in respect to feelings, while subsection (b) permits recovery of "exemplary and punitive damages" provided a request for retraction is made and a reasonable time allowed for the defendant to publish the retraction. The publication of such a retraction does not preclude an award of exemplary and punitive damages, but is admissible on the question of defendant's good faith and in mitigation and reduction of such damages.

At first blush the use of the terms "exemplary and punitive" suggests a legislative intent to permit an award of damages—in addition to actual damages—for the purposes either of punishing (*i.e.,* specifically deterring) defendant or of making an example of defendant for the benefit of other

potential purveyors of libel *(i.e.,* generally deterring). The history of that provision and the Michigan cases interpreting it, however, reveal that not to be the case.

Even before the original version of our libel statute was enacted, this Court had established the principle that "vindictive or exemplary" damages for libel are merely a species of "actual" *(i.e.,* compensatory) damages awarded to compensate plaintiff for the increased injury to feelings directly attributable to defendant's *fault* in publishing the libel:

> "It is in connection with the various degrees of blameworthiness chargeable on wrong-doers, that the discussions have arisen upon the subject of vindictive or exemplary damages, which, inasmuch as they rest upon actual fault, are by some authorities said to be designed to punish the wrong intent, while, according to others, the damages usually so called are only meant to recompense the sense of injury which is in human experience always aggravated or lessened in proportion to the degree of perversity exhibited by the offender. While the term exemplary or vindictive damages has become so fixed in the law that it may be difficult to get rid of it, yet it should not be allowed to be used so as to mislead, and we think the only proper application of damages beyond those to person, property or reputation, is to make reparation for the injury to the feelings of the person injured. This is often the greatest wrong which can be inflicted, and injured pride or affection may, under some circumstances, justify very heavy damages." *Detroit Daily Post Co v McArthur,* 16 Mich 447, 452-453 (1868).

See also *Scripps v Reilly,* 38 Mich 10, 23-24 (1878).

The first version of the libel statute, enacted in 1885, omitted any reference to injury to feelings as

an element of actual damages.[6] Perhaps due to Justice CAMPBELL'S criticism of that omission in *Park v The Detroit Free Press Co,* 72 Mich 560; 40 NW 731 (1888), the Legislature in 1895 added injury to feelings as an element of actual damages, separate from the existing provision for "exemplary or punitive" damages.[7] Thus, beginning with the 1895 enactment, all reenactments and compilations of the libel statute through the present-day version have provided for recovery both of actual damages—including compensation for injury to feelings—and of "exemplary or punitive damages."[8]

Notwithstanding the separate treatment of "actual" injury-to-feelings damages and "exemplary or punitive damages" in the statute, this Court continued to interpret the terms "exemplary or punitive" as referring to damages intended solely to *compensate* plaintiff for the increase in injury to feelings attributable to defendant's fault (or

[6] 1885 PA 233 provided:

"Section 1. *The People of the State of Michigan enact,* In any suits brought for the publication of a libel in any newspaper in this State the plaintiff shall recover only actual damages if it shall appear that the publication was made in good faith and did not involve a criminal charge, and its falsity was due to mistake or misapprehension of the facts, and that in the next regular issue of said newspaper after such mistake or misapprehension was brought to the knowledge of the publisher or publishers, whether before or after suit brought, a correction was published in as conspicuous a manner and place in said newspaper as was the article sued on as libelous.

"Sec. 2. In any action or suit for the publication of a libel in any newspaper in this State, the plaintiff shall not be entitled to recover, in addition to actual damages, any greater sum than five thousand dollars.

"Sec. 3. The words 'actual damages' in the foregoing section shall be construed to include all damages the plaintiff may show he has suffered in respect to his property, business, trade, profession or occupation, and no other damages."

[7] 1895 PA 216.

[8] 1895 PA 216; 1897 CL 10423, 10425; 1915 CL 12757, 12759; 1915 PA 314, ch XX, §§ 21, 23; 1929 CL 14471, 14473; 1948 CL 620.21, 620.23; 1961 PA 236, § 2911(2).

malice, in the common-law sense) in publishing the libel. See, *e.g., Long v Tribune Printing Co,* 107 Mich 207; 65 NW 108 (1895); *Boydan v Haberstumpf,* 129 Mich 137, 140; 88 NW 386 (1901); *Poledna v Bendix Aviation Corp,* 360 Mich 129, 144; 103 NW2d 789 (1960).

Because the Legislature, cognizant of this long-standing judicial gloss limiting exemplary and punitive damages to a compensatory role, has on several occasions through the years reenacted the libel statute without change, we conclude the Legislature intended that any award of "exemplary and punitive" damages comport with the established common-law gloss on those terms. Indeed, the latest reenactment of the libel provision in 1961 was accompanied by a committee comment stating that the new enactment was to be "considered in light of the interpretation of the present statute."[9] See *Postill v Booth Newspapers, Inc,* 118 Mich App 608, 629; 325 NW2d 511 (1982), *lv den* 417 Mich 1050 (1983).

---

[9] We ascribe no importance to the change in statutory language from "exemplary *or* punitive damages" to "exemplary *and* punitive damages" in the 1961 reenactment of the provision (emphasis added). The committee comment that accompanied the reenactment offers no explanation for the change, and simply states in full:

"This section is drawn entirely from the present statute and should therefore be considered in light of the interpretation of the present statute."

Nor do we deem it significant that the statute uses two terms—"exemplary" and "punitive"—where one would suffice. The history of punitive damages in Michigan case law demonstrates that these and other terms denoting punitive damages were often used interchangeably or in multiple combinations. See, *e.g., Orth v Featherly,* 87 Mich 315, 321; 49 NW 640 (1891):

"Where actual malice is shown in an action for slander or libel, the jury may always give *punitive* damages . . . . The amount of such *exemplary* damages must rest largely in the discretion of the jury, under proper instructions from the court, dependent upon the facts of each particular case." (Emphasis added.)

See generally Wade, The Michigan Law of Damages at 27-1. Thus, while ordinarily the use of distinct terms suggests that distinct meanings are intended, in this context we find that both terms refer to the same category of damages.

In reaffirming that both "actual damages" for injury to feelings and "exemplary and punitive damages" are intended only to compensate, we stress that these two categories of compensation damages are independent. The difference between them was highlighted by Justice WIEST in a case involving assault damages, *Wise v Daniel,* 221 Mich 229, 233-234; 190 NW 746 (1922):

"If a cow kicks a man in the face the consequent physical hurt may equal that from a kick in the face with a hob-nailed boot, but the 'cussedness' of the cow raises no sense of outrage, while the malicious motive back of the boot kick adds materially to the victim's sense of outrage. If a man employs spite and venom in administering a physical hurt he must not expect his maliciousness to escape consideration when he is cast to make compensation for his wrong. If the defendant maliciously inflicted the injury then the jury had a right to take into consideration such fact together with all the circumstances disclosed and award such sum by way of compensation as the plaintiff ought to receive, and the defendant ought to be made to pay."

In the libel context, actual damages for injured feelings are comparable to those attributable to the kick by the cow, *i.e.,* the plaintiff is compensated for injured feelings attributable simply to the *fact* and *effect* of the libel. Exemplary and punitive damages, however, compensate for the incremental injury to feelings attributable to the sense of indignation and outrage experienced by the plaintiff due to the defendant's bad faith or ill will in publishing the libel—*i.e.,* the "malicious motive back of the boot kick."[10]

---

[10] Our holding today does not conflict with our ruling in *Veselenak* v *Smith,* 414 Mich 567, 576-577; 327 NW2d 261 (1982), that actual damages and exemplary damages in the medical malpractice context necessarily overlap:

"These distinctions are, at least, legally unsound. Semantic niceties aside, juries are not asked to differentiate between mental states, such

Thus, while both types of damages do indeed compensate for injured feelings, exemplary and punitive damages pick up where actual damages leave off by in effect compensating the plaintiff for injured feelings attributable solely to the egregiousness of defendant's conduct.[11] To avoid confusing these two components of mental injury damages, thereby leaving open the possibility of double recovery for the same element, we urge that instructions be formulated to specify *both* "actual" damages for injured feelings and "exemplary and punitive" damages (for incremental injury to feel-

as shame, mortification, humiliation and indignity. Juries are asked to compensate mental distress and anguish, which flows ˙naturally from the alleged misconduct and may be described in such terms as shame, mortification, humiliation and indignity. In addition, if the plaintiff is being compensated for *all* mental distress and anguish, it matters not whether the source of the mental distress and anguish is the injury itself or the way in which the injury occurred." (Emphasis in original.)

In the absence of a legislative prescription for exemplary damages, we held in *Veselenak* that compensatory-type exemplary damages are merely a component of actual damages attributable to defendant's conduct and hence should not be separately awarded.

In the libel context, by contrast, the Legislature has provided separately for actual damages for injury to feelings and "exemplary and punitive" damages. In keeping with the reasoning applied in *Veselenak,* we define exemplary and punitive damages in this context to be a component of compensatory damages awardable only where defendant's conduct amounts to common-law malice.

[11] Although not intended as "punishment" damages, "exemplary and punitive damages" as we define them undoubtedly operate indirectly to punish. A libelous article published in good faith will not command as high a damage award as the identical article published with malicious intent, precisely because the latter will provide grounds for an award of exemplary and punitive damages. The latter defendant is therefore "punished" by a higher damage award attributable solely to ill will. We avoid characterizing the increased award as punishment, however, by requiring that such exemplary and punitive damages be measured by plaintiff's outrage rather than by defendant's maliciousness. As such, we merely compensate a libel plaintiff for *all* mental injury suffered, including that attributable to defendant's malicious intent, and therefore avoid the problems associated with an award of punishment-type libel damages under the state and federal constitutions as well as under judicial policy relating thereto. See Note, *The constitutionality of punitive damages in libel actions,* 45 Fordham L R 1382 (1977).

ings), with a direction to the jury permitting them to *increase* the actual damages award with exemplary and punitive damages only if the required elements (discussed below) are established. We suggest that development of a special verdict form directing the jury to address the discrete issues that must be resolved in cases involving such exemplary and punitive damage awards would assist both the deliberative process and the task of judicial review.

### III

By our ruling above, we necessarily reaffirm that exemplary and punitive damages for libel cannot be awarded in the absence of a finding that the defendant acted with common-law malice—in the sense of ill will or bad faith—in publishing the libel. This principle, most recently stated by this Court (with respect to medical malpractice) in *Veselenak v Smith,* 414 Mich 567, 574-575; 327 NW2d 261 (1982), also has a long history of application in libel cases. See, *e.g., Orth v Featherly,* 87 Mich 315, 321; 49 NW 640 (1891) ("[Plaintiff] was entitled to recover punitive damages, if the facts proved establish express and wanton malice"); *Couch v Mining Journal Co,* 130 Mich 294, 297; 89 NW 936 (1902) ("[Whether plaintiff] was entitled to punitory damages would depend upon whether the publication was malicious . . ."); *Lawrence v Fox,* 357 Mich 134, 146; 97 NW2d 719 (1959) ("The existence of ill will or the absence of honest belief . . . may affect the measure of damages to be imposed, particularly as to punitive damages . . ."). See also *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 419; 295 NW2d 50 (1980). Since we define exemplary and punitive damages as compensation for injured feelings at-

tributable solely to defendant's bad faith or ill will
(*i.e.,* common-law malice), the foregoing rule sim-
ply implements our definition of exemplary and
punitive damages in the form of a requirement of
proof.

We recognize that a private defamation plaintiff
must face an imposing array of barriers to recover
exemplary and punitive damages. In this case, for
example, plaintiffs were required to prove constitu-
tional "actual malice"—*i.e.,* knowledge of falsity or
reckless disregard for the truth—simply to defeat
defendants' qualified privilege to report on matters
of public interest and thereby establish liability for
actual damages.[12] Under the principles we adhere
to today, an award of exemplary and punitive
damages further requires the plaintiffs to prove
compliance with the statute's retraction request
procedure as well as defendant's common-law mal-
ice in publishing the libel. We do not find these
extra burdens unreasonable, however, in light of
the special significance attached to the reporting
of matters in the public interest. In essence, our
balance is struck to limit the reporter acting reck-
lessly, but in good faith, to liability for actual

[12] The Supreme Court in *Gertz v Robert Welch, Inc,* 418 US 323,
347; 94 S Ct 2997; 41 L Ed 2d 789 (1974), left it for the states to define
their own standards of liability in private figure defamation actions,
requiring only that liability without fault not be imposed. In the wake
of that decision, our courts have continued to apply the common-law
rule requiring that a private defamation plaintiff prove "malice" to
defeat the qualified privilege to report on matters of public interest;
however, our courts have not been unanimous in determining which
standard of malice—common law or constitutional—is the appropriate
standard after *Gertz.* See *Peisner v Detroit Free Press,* 82 Mich App
153, 163-164; 266 NW2d 693 (1978) (constitutional standard); *Postill v
Booth Newspapers, Inc,* 118 Mich App 608, 620; 325 NW2d 511 (1982)
(common-law standard). Because this issue was not raised on appeal,
we merely note our approval of the more recent pronouncements in
courts applying our statute that have opted for application of the
constitutional standard in this type of case. See *Gaynes v Allen,* 128
Mich App 42; 339 NW2d 678 (1983); *Schultz v Newsweek, Inc,* 668
F2d 911, 918 (CA 6, 1982); *Apostle v Booth Newspapers, Inc,* 577 F
Supp 962 (WD Mich, 1984).

damages only, while the reporter acting recklessly and in bad faith must bear the additional liability for exemplary and punitive damages.[13] This scheme protects the legitimate interests of both constituencies, providing full and fair compensation to plaintiffs while avoiding unduly burdensome damage awards, save in the exceptional case where the defendant is motivated by ill will or bad faith.

## IV

In the instant case, the trial judge gave the following instructions regarding the award of *actual* damages:

"Now, if you decide that the Plaintiff husband is entitled to damages, it is your duty to determine the amount of money which reasonably, fairly and adequately compensates him for each of the elements of damage which you decide has resulted from the publication by the Defendant. You should include each of the following items of damage which you decide have been sustained by the Plaintiff to the present time, and they include:

"The actual damages which the Plaintiff has suffered in respect to his property or business, trade, occupation or feelings, his mental anguish, his denial of social pleasures and enjoyment, his embarrassment, ridicule, humiliation, mortification or fear. You may also include

[13] We assume without deciding that the publishing of an article with *knowledge* of falsity—establishing liability for actual damages under the constitutional "actual malice" standard—would necessarily establish bad faith, therefore proving the common-law malice required to justify an award of exemplary and punitive damages. A reporter or publisher acting with reckless disregard for the truth, however, might be held liable under the constitutional standard without necessarily incurring liability for exemplary and punitive damages because the reporter or publisher did not act in bad faith or with ill will towards the plaintiff. That the two standards are not congruent was recognized by the Supreme Court in *Cantrell v Forest City Publishing Co,* 419 US 245, 251-252; 95 S Ct 465; 42 L Ed 2d 419 (1974).

any of those elements of damage which you determine that the Plaintiff is reasonably certain to sustain in the future.

"Now, which, if any, of those elements of damage has been proved is for you to decide. But you have to decide that based upon evidence and not upon speculation, not upon guess and not upon conjecture. The amount of money to be awarded for certain of these elements of damage—such as: mental anguish, denial of social pleasures, embarrassment, mortification and ridicule and things like that—the amount of money awarded for those elements can't be proved in a precise dollar amount. The law leaves both amounts to your sound judgment. But your verdict must be solely to compensate the Plaintiff for his damages and not to punish the Defendants."

As to *exemplary and punitive* damages, the judge further instructed:

"Now, members of the jury, the Michigan statute which I have just quoted mentions punitive damages. Now, under our law—and I want to correct any possible misimpressions—under our law the purpose of these 'punitive damages' is not to punish the Defendant[s] for their misdeeds. The purpose of these damages, which I prefer to refer to as additional damages rather than punitive damages, is to compensate the Plaintiffs for injuries suffered by them because of the Defendants' actions.

"I charge you, that although the focus is upon the Plaintiff's injuries, in measuring these additional and exemplary damages, the focus is on the Defendant[s'] actions in determining if these additional damages should be awarded.

"It has long been the position of the Courts of Michigan that the sting of libel will be much greater when the Defendants have acted with either knowledge of the falsity of the material, or with a reckless disregard for the truth. Since the injury is greater because of the Defendant[s'] actions, the Plaintiffs are entitled to recover greater damages than the actual damages. And

this is what this punitive damages, which I referred to as additional damages means.

\* \* \*

"If you also find that the Plaintiff, Balfour Peisner, has established by a clear and convincing evidence that the Defendants published the article knowing the facts stated in it were false, or that the Defendants published the article with a reckless disregard for whether the facts stated were false or not, then you may also award him exemplary or additional damages, as I have explained them to you before. Such additional damages may be awarded only if the evidence of the known falsity or reckless disregard for the truth is clear and convincing. A simple preponderance of evidence which is sufficient in the actual damages, is not sufficient to award additional damages.

\* \* \*

"If you also decide that the Plaintiff, Mr. Peisner, is entitled to what I have labeled additional damages because the publishers of the—I'm sorry. Because the publisher knew that the facts were false or because the article was published with a reckless disregard for the truth, then you may award additional damages to the Plaintiff Peisner, and these additional damages are allowed to compensate him because the sting of libel is much greater—it's made much greater when the Defendants have acted with knowledge of the falsity.

"You may estimate such additional damages in order to fairly compensate the Plaintiff for the purposes of such additional damages. As I said, although they're called punitive, it's not to punish the Defendants."

We commend the trial judge's effort to adhere to our earlier cases in fashioning both sets of instructions.

### A. *Actual Damages*ʾ

Our rule confining exemplary and punitive damages to a purely compensatory role necessarily limits the permissible scope of actual damages in libel actions. This has led to understandable confu-

sion, since actual damages for injury to feelings would appear to encompass any award for "compensatory" exemplary and punitive damages. See *Veselenak, supra,* 414 Mich 576-577. We avoid that overlap, however, by defining exemplary and punitive damages as compensating only the *incremental* injury to feelings attributable to defendant's malice. Thus, while in fact both "actual" and "exemplary and punitive" damages compensate the plaintiff, the latter operates to increase "actual" compensation only in cases where the defendant is proved to have acted with common-law malice towards the plaintiff.

The instruction on actual damages given in this case accurately sets forth the elements of actual injury to feelings as they are defined in this state; and the jury was told that additional damages were not to punish the defendant. While an instruction that limited the award of actual damages to injury arising from the fact and effect of the libel might have been more accurate, we find that the instructions properly expressed the distinction between actual and exemplary and punitive damages. The jury was admonished that the latter category must be compensatory, and we therefore find no reversible error in this regard.

## B. *Exemplary and Punitive Damages*

Under our rule defining exemplary and punitive damages with reference to defendant's *common-law* malice, we find the instruction given defective. Rather than instructing the jury to find *common-law* malice (bad faith or ill will) toward the plaintiff as a prerequisite to awarding exemplary and punitive damages, the judge instructed that a finding of constitutional *actual* malice (knowledge of falsity or reckless disregard for the truth) would justify such an award. While a finding of "actual

malice" (to establish liability) may in some instances supply the elements necessary for a finding of "common-law malice," the lack of congruence between the two standards requires that the jury be instructed specifically on *common-law* malice—in the sense of ill will or bad faith towards the plaintiff—as a prerequisite to this increased recovery.

## V

In sum, we affirm the judgment of the Court of Appeals remanding for a new trial solely on the issue of damages, but modify that decision in accordance with the principles set forth in this opinion.[14] Because the jury was not properly instructed on the necessity for a finding of *common-law* malice as a prerequisite to an award of exemplary and punitive damages the issues to be tried on remand are the existence of any common-law malice on the part of either or both of the defen-

---

[14] Plaintiffs also challenge the Court of Appeals finding of error with respect to Peisner's reading to the jury defendants' truth-defense pleading. The cases cited by the Court of Appeals to support the proposition that statements in pleadings are absolutely privileged address only the use of such statements as the *basis* for a libel action. See, *e.g., Sanders v Leeson Air Conditioning Co,* 362 Mich 692; 108 NW2d 761 (1961). Those cases are inapposite since clearly Peisner did not base this libel action on defendants' responsive pleading.

In relevant part, our libel statute, MCL 600.2911(3); MSA 27A.2911(3), provides:

"If the defendant in any action for slander or libel gives notice in his justification that the words spoken or published were true, this notice shall not be *of itself* proof of the malice charged in the complaint though not sustained by the evidence." (Emphasis supplied.)

A common sense reading of this provision leads us to conclude that where the *only* evidence of malice is defendant's pleading of truth as a defense, the pleading is inadmissible. Since the Court of Appeals determined the error to be harmless due to other evidence of malice in the case, 104 Mich App 67, we find the pleading to be properly admissible as not "of itself proof of the malice charged in the complaint though not sustained by the evidence."

dants in publishing the article, and, if *common-law* malice is shown, the existence and amount of any incremental injury to feelings attributable to such malice to be compensated by exemplary and punitive damages *increasing* the award of actual damages.

WILLIAMS, C.J., and KAVANAGH, RYAN, BRICKLEY, and CAVANAGH, JJ., concurred with BOYLE, J.

LEVIN, J., concurred in the result only.