**BANDIDO'S, INC., Appellant**
**(Plaintiff Below),**

v.

**JOURNAL GAZETTE COMPANY, INC., Fort Wayne Newspapers, Inc., and Richard G. Inskeep, Appellees (Defendants Below).**

No. 57A03–9012–CV–00533.

Court of Appeals of Indiana,
Third District.

July 24, 1991.

Opinion on Denial of Rehearing
Oct. 7, 1991.

Robert E. Connolly, Fort Wayne, for appellant.

John D. Walda, Barrett & McNagny, Fort Wayne, for appellees.

STATON, Judge.

Bandido's, Inc. (Bandidos) appeals the trial court grant of summary judgment in favor of the Journal Gazette Co., Inc., Fort Wayne Newspapers, Inc., and publisher Richard Inskeep (collectively, the Newspaper). Bandidos filed suit for compensatory and punitive damages alleging the Newspaper printed a libelous headline resulting in substantial business losses. Bandidos raises six issues on appeal, which can be consolidated and rephrased as whether the trial court improperly granted summary judgment.

Reversed and remanded.

Bandidos operates three Mexican-style restaurants in Fort Wayne and one in nearby Lima, Ohio. On September 13, 1988, the Fort Wayne–Allen County Board of Public Health (Board of Health) conducted an inspection of the Bandidos restaurant located in the Northcrest Shopping Center in Fort Wayne (Northcrest Bandidos). The inspection report noted several problems, including: "Evidence of flies, roaches and rodents noted. Advise exterminator to do a full clean out of premise [sic]. Rodent droppings noted only in restroom."

Record, p. 576. This item was among the many problems that required attention within thirty days, while some violations merited immediate action. One week later, a pest prevention service conducted a full clean out of the restaurant.

Approximately two weeks later, on October 4, 1988, the Board of Health conducted a second inspection to gather information for a hearing to be held the following day on the revocation of the Northcrest Bandidos' food service permit. Although the inspector observed some health code violations in the follow-up inspection, she did not find evidence of insects or rodents. Following the hearing on October 5, the Board of Health closed the restaurant.

On October 6, 1988, after obtaining copies of both inspection reports,[1] the Newspaper ran a story captioned with the following headline:

### HEALTH BOARD SHUTS DOORS OF BANDIDO'S

**Investigators find rats, bugs, at north-side eatery**

The story and its headline ran in the Newspaper's first edition, circulated in northwestern Ohio communities, including Lima, and in the final edition circulated in the Fort Wayne area. The story was not included in the second edition, published for Indiana counties surrounding Fort Wayne.

That same day, the president of Bandidos met with representatives of the Newspaper to demand an immediate and full headline retraction, claiming the headline was erroneous and misleading in several respects, including: only one of four Bandidos restaurants was closed; health inspectors did not find rats or evidence of rats at the Northcrest Bandidos; and closure was based upon the second report that did not reveal any infestation, instead of the earlier inspection of the restaurant. Rather than print a headline retraction, the Newspaper included the following paragraphs in its story the following day on the Northcrest Bandidos' reopening:

Because of an editing error, a headline—not the story—in some editions of Thursday's Journal–Gazette said inspectors had found rats and bugs at the restaurant.

No evidence of rats was found at the restaurant. The Journal–Gazette apologizes for the inaccuracy of the headline.

On October 18, 1988, Bandidos demanded a full and complete retraction in writing as defined by IND.CODE 34-4-15-1 (1988).[2] The Newspaper refused, and Bandidos filed suit on November 21, 1988. The trial court concluded that there existed no facts in the record to support a finding of actual malice in the minds or conduct of any Newspaper employee. Finding no genuine issue of material fact on the element of malice, the trial court found that the Newspaper was entitled to judgment as a matter of law.

When reviewing the grant of a motion for summary judgment, this court will stand in the shoes of the trial court and consider the same matters as does the trial court. *Kolczynski v. Maxton Motors, Inc.* (1989), Ind.App., 538 N.E.2d 275, 276, *trans. denied.* Summary judgment is appropriate only when the pleadings, deposi-

---

1. The Newspaper was only able to obtain copies of the inspection reports after prevailing in its lawsuit against the Board of Health in Allen Superior Court, cause number 02D01–8802–CP–302. Prior to judgment in that case, the Board of Health had denied access to its records based on policy concerns. The trial court ruled that the Board of Health policy violated Indiana's Access to Public Records Act, IC 5–14–3–1, et seq., and found in favor of the Newspaper.

2. Relevant portions of this statute are as follows:

(a) Before bringing any suit for the publication of a libel by any newspaper or the transmission of a libel by any news service in this state, the aggrieved party shall:

\* \* \* \* \* \*

(2) at least six (6) days before filing the complaint against a daily newspaper; ...

serve notice in writing specifying the factual statements in the article that are alleged to be false and defamatory, and correcting their falsity by reference to the true facts....

(b) If it appears at the trial of the action that the article was published or transmitted in good faith, and that its falsity was due to mistake or misapprehension of the facts, the plaintiff in the case is entitled to recover only actual damages if:

(1) a full and fair retraction of any factual statement alleged to be false and defamatory was published in a regular issue of the newspaper ...:

\* \* \* \* \* \*

(B) within five (5) days, if the newspaper is a daily publication; ...

after the mistake or misapprehension was brought to the knowledge of the publisher or bureau chief; and

(2) the retraction was published *in as conspicuous a place and type as the original item* appeared in the newspaper....

IC 34–4–15–1 (emphasis added).

tions, answers to interrogatories, and admissions on file, together with affidavits and testimony, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We will review these materials in the light most favorable to the nonmoving party. *Bischoff Realty, Inc. v. Ledford* (1990), Ind.App., 562 N.E.2d 1321, 1323. This standard is applicable to a libel case, i.e., the non-movant must show affirmatively that there is a genuine issue of fact to resolve with respect to one of the elements of libel. *Cochran v. Indianapolis Newspapers, Inc.* (1978), 175 Ind.App. 548, 372 N.E.2d 1211.

■ In Indiana, a "private individual" such as Bandidos may recover for defamatory statements published in a newspaper only upon a showing that the statement was published with "actual malice." The Indiana standard for actual malice is the culmination of a number of United States Supreme Court cases beginning with *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, where the Court first enunciated the qualified privilege for media expression in the context of first amendment doctrine, requiring a "public official" to prove that a defamatory statement was made with actual malice in order to recover damages. *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, extended this protection to media comments on matters of public interest concerning "public figures." The Court in *Rosenbloom v. Metromedia, Inc.* (1971), 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 increased the degree of first amendment protection by shifting the focus of the privilege from the person's status to the newsworthiness of the published statement. Finally, in *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, the Supreme Court found that the actual malice standard is applicable only to "public figures" and not to private individuals involved in newsworthy matters. However, under *Gertz*, the states are given the option to define their own standard of constitutional privilege, as long as the standard does not provide for liability without fault.

Concluding that "constitutional protection for speech and press was not intended to be limited to matters bearing only on issues of official conduct or the activities of pre-ordained or *de-facto* 'public figures'[,]" this court adopted the *New York Times*

standard of actual malice. *Aafco Heating & Air Conditioning Co. v. Northwest Publications, Inc.*, (1974), 162 Ind.App. 671, 680, 321 N.E.2d 580, 586, *cert. denied* (1975), 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318. The standard adopted in *Aafco* "requires the private individual who brings a libel action involving an event of general or public interest to prove that the defamatory falsehood was published with knowledge of its falsity or with reckless disregard of whether it was false." *Id.*

In considering the type of conduct amounting to a reckless disregard for a statement's falsity, the United States Supreme Court determined that:

reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.

\* \* \* \* \* \*

Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.

*St. Amant v. Thompson* (1968), 390 U.S. 727, 731–32, 88 S.Ct. 1323, 1325–26, 20 L.Ed.2d 262. Reckless disregard is also established by "an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Curtis Publishing, supra,* 388 U.S. at 155, 87 S.Ct. at 1991.

The *St. Amant* Court made clear, however, that the defendant in a defamation action cannot automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. "The *finder of fact* must determine whether the publication was indeed made in good faith." 390 U.S. at 732, 88 S.Ct. at 1326 (emphasis added).

The Newspaper asserts that Bandidos' failure to *prove* actual malice with convincing clarity demands summary judgment. Appellee's Brief, p. 11. This contention is without merit because it addresses Bandi-

dos' evidentiary burden *at trial.* To ask the trial court to find that the plaintiffs have been unable to prove their case is to request the court to weigh evidence. This is not the function of a trial court on a motion for summary judgment. *See Chester v. Indianapolis Newspapers, Inc.* (1990), Ind.App., 553 N.E.2d 137, *trans. denied.* In *Chester,* our court of appeals was first presented with the opportunity to determine whether to apply the standard set forth in *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, to a libel case in Indiana. The United States Supreme Court in *Liberty Lobby* held:

> where the factual dispute concerns actual malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be *whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.*

*Id.* at 255–56, 106 S.Ct. at 2514 (emphasis added).

In declining to apply the *Liberty Lobby* standard, Judge Buchanan noted in *Chester* that our supreme court has deemed summary judgment appropriate *only* when no issue of material fact exists and the movant is entitled to judgment as a matter of law. 553 N.E.2d at 140–41. Thus, this court is concerned only with the *existence* of factual questions, and not with a litigant's ability to sustain the burden of proof upon those issues. *Id.* (citing *McNabb v. Mason* (1970), 148 Ind.App. 233, 241, 264 N.E.2d 623, 627). To determine at this stage that the issues in dispute are (or are not) sufficient to prove the case clearly and convincingly would be to invade the province of the trier of fact. We agree with the application of the summary judgment standard as articulated in the *Chester* decision, *supra.*

Bandidos underscores the following facts and inferences flowing therefrom to establish a disputed issue suitable for trial. First, the Newspaper had been "warned" by the Allen Superior Court of the dangers of misinterpreting or misconstruing Board of Health inspection reports. *See* note 1, *supra.* In his decision granting the News-

paper's demand for access to Board of Health records, the Honorable Vern Sheldon noted:

> ... there *is* a possibility that public disclosure of the inspection reports might result in improper inferences or interpretations as to the seriousness of the violations noted.
>
> \* \* \* \* \* \*
>
> The Intervenor ... is also concerned about the possible misconstruction of violations or the seriousness of violations noted in inspection reports and the negative effect that publication of the reports might have on the business of individual food establishments.

Record, pp. 296–97 (emphasis in original). While this "warning" (if it can be characterized as such) may establish the knowledge of harm which may result from publication, it in no way tends to prove actual malice in the instant case; i.e., that the Newspaper knew their headline was published with knowledge of its falsity or in reckless disregard thereof.[3]

Bandidos next argues that actual malice can be inferred from the Newspaper's possession of the September 13, 1988 Board of Health Report that listed "evidence of flies, roaches and rodents noted," but did not mention "rats" or "bugs." The follow-up inspection, conducted the day prior to the closure hearing, indicated that the problem had been corrected. While the headline indicates that the Northcrest Bandidos was closed because the Board of Health found "rats and bugs," the inference favorable to Bandidos is that the restaurant was closed for other reasons, inasmuch as there was no insect or rodent problem noted on the follow-up inspection. Indeed, it is implausible the Board of Health would base its decision to close an establishment for a problem that had been corrected.

We are not persuaded by the Newspaper's argument that we may examine only the conduct of the headline author in our analysis of "actual malice." Reckless disregard may be shown by "an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Curtis Publishing, supra,* 388 U.S. at 155, 87 S.Ct. at 1991. Therefore, we cannot isolate our review solely on the conduct of the headline writer. *See Indianapolis Newspapers, Inc. v.*

---

**3.** In this connection, Bandidos urges this court to reject the *New York Times* test for "actual malice" in favor of a negligence standard because the Newspaper had prior notice of the dangers inherent in interpreting Board of Health records. We decline to abandon the

standard for "actual malice" adopted in Indiana by *Aafco, supra.* If and when a compelling case can be made for modification of Indiana's libel law, our courts will respond accordingly. This, however, is not such a case.

*Fields* (1970), 254 Ind. 219, 259 N.E.2d 651, *cert. denied* 400 U.S. 930, 91 S.Ct. 187, 27 L.Ed.2d 190 (evidence of reporter's ill will imputed to defendant newspaper).[4] Deposition testimony of Stephan Klugman, editor of the Journal Gazette, indicated that the Newspaper took steps to insure that the possibility of improper inferences or interpretations from Board of Health reports would be limited. Record, pp. 280–81. A reasonable juror could find the Newspaper's failure to limit such inferences and interpretations to be such an extreme departure from responsible standards that the departure amounted to a reckless disregard for the headline's falsity.

Bandidos further contends that the Newspaper's act of placing the defamatory headline only in editions servicing areas in which a Bandido's Restaurant is located warrants an inference of actual malice. The headline and story were omitted from the second edition, which is circulated in counties in Indiana surrounding Fort Wayne. Although a plausible explanation is that the item was not as newsworthy in areas serviced by the second edition, the inference favorable to Bandidos is that inclusion of the article in only the first and third editions was motivated by actual malice.

Finally, Bandidos argues that a media defendant's failure to retract the headline in the manner specified by IC 34–4–15–1, note 2, *supra,* is admissible evidence on the issue of "actual malice." Although we agree with this general proposition (*See, e.g., Peisner v. Detroit Free Press, Inc.* (1984), 421 Mich. 125, 364 N.W.2d 600; *Hoffman v. Washington Post Co.* (D.D.C.1977), 433 F.Supp. 600, *aff'd* (D.C.Cir.1978), 578 F.2d 442; *Mahnke v. Northwest Publications, Inc.* (1968), 280 Minn. 328, 160 N.W.2d 1), such evidence may not necessarily prove the existence of actual malice in this case. The Newspaper did run a retraction within an article that could only be considered favorable to Bandidos. Whether actual malice may be inferred from the Newspaper's decision to insert the retraction in the body of the follow-up article, rather than in the manner prescribed by IC 34–4–15–1 is an issue for the trier of fact.

In the face of the facts and inferences therefrom favorable to Bandidos, the trial court in its judgment extensively cited to deposition testimony by Newspaper employees to demonstrate the absence of any triable issue on the element of actual malice. In doing so, the court improperly assessed the credibility of the witnesses, placing greater weight on their testimony than on the non-movant's claims and supporting evidence. Summary judgment is not a substitute for a trial to resolve factual disputes. Though the trial court may believe the non-movant will be unsuccessful at trial, summary judgment should not be granted where material facts are disputed or conflicting inferences arise. *Greives v. Greenwood* (1990), Ind.App., 550 N.E.2d 334, 337.

Because facts are in dispute and conflicting inferences have arisen on the issue of actual malice, summary judgment is not appropriate. Accordingly, this cause is reversed and remanded for a trial on the merits.

HOFFMAN and BUCHANAN, JJ., concur.

### OPINION ON PETITION FOR REHEARING

The Journal Gazette Co., Inc., Fort Wayne Newspapers, Inc., and publisher Richard G. Inskeep (collectively, the Newspaper) petition for rehearing from this court's decision reversing a grant of summary judgment for the Newspaper in a libel action by Bandido's, Inc. (Bandidos), reported at 575 N.E.2d 324. This court found that a genuine issue of material fact remained on the element of actual malice, rendering summary judgment inappropriate. The Newspaper now contends that this court erred in three respects, two of which were adequately addressed in our decision. A third issue pertaining to proof of actual malice requires clarification on our part.

In our opinion dated July 24, 1991, we reaffirmed the standard that "requires a private individual who brings a libel action involving an event of general or public interest to prove that the defamatory falsehood was published with knowledge of its falsity or with reckless disregard of whether it was false." 575 N.E.2d at 327 (quoting *AAFCO Heating & Air Conditioning Co. v. Northwest Publications, Inc.* (1974), 162 Ind.App. 671, 680, 321 N.E.2d 580, 586, *cert. denied* (1976), 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318). In determining the type of conduct amounting to reckless disregard for a statement's falsity, we quoted

---

**4.** In *Fields,* our supreme court affirmed the trial court judgment for the plaintiff by virtue of a 2–2 vote (Givan, J., not participating). Justices Arterburn and Hunter cast their dissenting votes on an issue relating to hearsay evidence.

from the U.S. Supreme Court in *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094, *reh. denied,* for the proposition that reckless disregard may be shown by "an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." 575 N.E.2d at 327.

The Newspaper calls our attention to the fact that this holding never commanded a clear majority of the Supreme Court, and was specifically rejected in *Harte–Hanks Communications, Inc. v. Connaughton* (1989), 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562. The *Harte–Hanks* Court explained that Justice Harlan in *Curtis Publishing Co.* proposed that the "professional standards" test be employed in place of the actual malice standard when a public official is not involved. *Harte–Hanks* at 665–66, 109 S.Ct. at 2684–85, 105 L.Ed.2d 562. This suggestion was, however, rejected by the *Curtis Publishing Co.* plurality. *Harte–Hanks* at 666, 109 S.Ct. at 2685, 105 L.Ed.2d 562. Thus, the "professional standards" approach is, alone, insufficient to prove a reckless disregard for the falsity of a statement.

This conclusion does not necessarily mean that a trier of fact may not consider an extreme departure from professional standards as evidence of a reckless disregard for a statement's falsity. As the *Harte–Hanks* Court opined:

> when the [lower court's] opinion is read as a whole, it is clear that the conclusion concerning the newspaper's departure from accepted standards and the evidence of motive were merely supportive of the court's ultimate conclusion that the record "demonstrated a reckless disregard as to the truth or falsity of [the] allegations and thus provided clear and convincing proof of 'actual malice' as found by the jury." 842 F.2d, at 847. Although courts must be careful not to place too much reliance on such factors, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence ..., and *it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry.*

491 U.S. at 667–68, 109 S.Ct. at 2686, 105 L.Ed.2d 562 (emphasis added).

It is also important to note that the appeal in *Harte–Hanks* followed entry of judgment on a jury verdict, whereas this case involves a review from the grant of summary judgment. Summary judgment on the element of actual malice is not appropriate when the non-movant establishes a genuine issue of material fact as to that issue. *Cochran v. Indianapolis Newspapers, Inc.* (1978), 175 Ind.App. 548, 372 N.E.2d 1211. The *Harte–Hanks* decision makes clear that evidence of an extreme departure from professional standards may support a finding of actual malice. The non-movant in this case, Bandidos, has demonstrated a genuine issue of material fact. We issue this opinion only to clarify that Bandidos must demonstrate more than an extreme departure from professional standards in order to *prove* actual malice at trial.

Petition for rehearing is denied.

HOFFMAN and BUCHANAN, JJ., concur.