HODGINS v THE TIMES HERALD COMPANY

Docket Nos. 98932, 99213. Submitted February 11, 1988, at Detroit. Decided June 7, 1988. Leave to appeal applied for.

The Port Huron Times Herald, a newspaper owned by the Times Herald Company, published on its editorial page a letter from George Burgess, vice president of the St. Clair County Humane Society, concerning the sale of county pound animals for vivisection. On the date the letter was published, St. Clair County had a contract with Hodgins Kennels, jointly owned by Fred and Jan Hodgins, whereby Hodgins Kennels would dispose of unwanted county pound animals. Hodgins Kennels would resell these unwanted animals to government-registered facilities for use in research. The Burgess letter indicated that "pound animals are sold not only to hospitals (which are not necessarily humane) but to anyone with Mr. Hodgins asking price" and that some of the animals "end up as training animals to be killed by dogs being trained for the many dog fights staged in the state." The county thereafter decided to terminate the contract with Hodgins Kennel. As a result of the termination of the contract with the county, Fred and Jan Hodgins were unable to supply their full demand for research animals. Fred and Jan Hodgins brought separate libel actions against the Times Herald Company and George Burgess. The actions were consolidated and transferred to St. Clair Circuit Court. A default judgment was entered against Burgess. Following a trial before Ernest F. Oppliger, J., the jury returned a verdict of $130,000 in actual damages for which both the newspaper company and Burgess were liable and a verdict of $70,000 in exemplary damages for which only Burgess was liable. Following the denial of various posttrial motions in the trial court, defendant newspaper company appealed from the entry of the $130,000 verdict for actual damages against it, and plaintiffs

REFERENCES

Am Jur 2d, Libel and Slander §§ 8 *et seq.,* 302.

Am Jur 2d, Trial §§ 7 *et seq.*

State constitutional protection of allegedly defamatory statements regarding private individual. 33 ALR4th 212.

Defamation: publication of "letter to editor" in newspaper as actionable. 99 ALR3d 573.

filed a separate appeal from the refusal of the trial court to amend the jury award to make defendant newspaper company liable on the $70,000 exemplary damages award. The appeals were consolidated.

The Court of Appeals *held:*

1. Since the Burgess letter implied that plaintiffs sold animals used for dog fights and thereby implied that plaintiffs were involved in activities which constituted a crime under both state and federal laws, the letter could not be considered a constitutionally protected expression of opinion. Direct accusations or inferences of criminal conduct or wrongdoing are not protected as opinion.

2. Although there was public discussion as to whether the county should continue the sale of pound animals to plaintiffs' kennel for resale for research, the plaintiffs had not injected themselves personally into that controversy. Accordingly, plaintiffs were private persons rather than public figures, and the proper standard for determining whether there was actionable libel was whether defendant newspaper company acted with negligence in printing the letter, rather than whether it acted with actual malice. In any event, the record would support the jury's finding of actual malice.

3. No error mandating reversal resulted from the trial court's instructions to the jury.

4. The record supports the jury's finding that plaintiffs suffered actual damages.

5. The trial court did not err in refusing to sever the action against the newspaper company from the action against Burgess. Since the jury considered only the question of damages with respect to Burgess, the newspaper suffered no prejudice by the joint trial.

6. The record supports the jury's determination that plaintiff Jan Hodgins was also libeled by the Burgess letter.

7. Since the jury found that defendant newspaper company did not publish the Burgess letter in bad faith or with ill will, the jury properly did not make defendant newspaper company liable for the exemplary damages and the trial court properly refused to amend the judgment to make defendant company liable for the award of exemplary damages.

Affirmed.

1. LIBEL AND SLANDER — EXPRESSIONS OF OPINION — CRIMINAL CONDUCT.

Expressions of opinion are protected from defamation actions; however, direct accusations or inferences of criminal conduct or

wrongdoing are not protected as opinion; there is no constitutional protection for a charge which reasonably would be construed as imputing specific criminal conduct or wrongdoing.

2. LIBEL AND SLANDER — DOG FIGHTS — CRIMINAL CONDUCT — EXPRESSIONS OF OPINION.

A statement that an individual sold dogs for use in dog fighting constitutes an accusation of illegal or wrongful conduct, since dog fighting is a crime under state law and the sale or transportation of dogs for fighting is a federal crime; such a statement is not protected from a defamation action as an expression of opinion.

3. LIBEL AND SLANDER — PRIVATE PERSONS — NEGLIGENCE.

The standard for determining liability for defamation of a private-figure plaintiff where the speech at issue is of public concern is not malice, but negligence.

4. LIBEL AND SLANDER — PUBLIC FIGURES — QUALIFIED PRIVILEGE — MALICE.

Public figures may not recover damages for a defamatory falsehood that relates to the issues giving rise to their public status unless they can prove that the statements were made with actual malice.

5. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — LIMITED PUBLIC FIGURES.

A private person may become a limited-purpose public figure for the purpose of the application of the constitutional qualified privilege in a libel action where there is a particular public controversy into which the person voluntarily injects himself or permits himself to be drawn.

6. TRIAL — SEPARATE TRIALS.

The decision to sever trials is within the trial judge's discretion and should be ordered only upon a most persuasive showing.

7. LIBEL AND SLANDER — DAMAGES — EXEMPLARY DAMAGES — COMMON-LAW MALICE.

Exemplary damages in a libel case can be awarded only if the plaintiff proves that the defendant published with common-law malice, i.e., in bad faith or with ill will; such malice must be shown when seeking exemplary damages even where only negligence need be shown to recover actual damages.

*Levin, Levin, Garvett & Dill* (by *Nancy L. Kahn*), for plaintiffs.

*Sullivan, Beauchamp, Kelly & Whipple* (by *Charles G. Kelly*), and *Nixon, Hargrave, Devans & Doyle* (by *Robb M. Jones* and *Patricia A. Ayers*), for The Times Herald Company.

Before: M. J. KELLY, P.J., and H. HOOD and M. WARSHAWSKY,* JJ.

H. HOOD, J. Defendant Times Herald Company (hereinafter defendant) appeals as of right from a jury verdict of $130,000 in favor of plaintiffs in plaintiffs' libel action against defendant. Plaintiffs appeal separately from the denial of their motion to amend the judgment to hold defendant liable for an additional $70,000 in exemplary damages.

Plaintiffs, Fred and Jan Hodgins, husband and wife, are joint owners of Hodgins Kennels in St. Clair County. Plaintiffs incorporated Hodgins Kennels in 1982, with each plaintiff owning fifty percent of the stock; prior to 1982 plaintiffs operated the kennel as a partnership. Jan Hodgins was active in the kennel business for twenty-two years and was a partner in the business in 1981.

Plaintiffs are state and federally licensed animal dealers who supply animals for medical research. Plaintiffs obtain unwanted animals from county and city dog pounds and resell then to government-registered facilities for use in research. Plaintiffs are regularly inspected by the Michigan and federal departments of agriculture. Plaintiffs' kennel business is regulated by both federal and Michigan statutes.

Plaintiffs contracted with St. Clair County to dispose of unwanted animals from the St. Clair County dog pound between 1971 and 1979. This contract was interrupted in 1979 when the county demolished its old dog pound to build a new pound

---

* Circuit judge, sitting on the Court of Appeals by assignment.

on the same site. The county then contracted with the St. Clair Humane Society to temporarily house stray animals while the new pound was being built. The Humane Society opposed animal research and does not allow animals to be released for use in research. After the new pound was built, the county resumed its original contract with plaintiffs and terminated the contract with the Humane Society. However, the Humane Society made a concerted effort to regain the county contract and made an issue over the use of the pound animals in research. There was continuing controversy in St. Clair County over the use of the new county dog pound instead of the Humane Society shelter.

Defendant's publisher and president, Phil Abrell, was a supporter of the St. Clair Humane Society and favored having the Humane Society run the county animal shelter. The *Port Huron Times Herald* ran an extensive fund-raising campaign for the Humane Society, which included frequent newspaper articles covering the Humane Society and its fund-raising efforts. Defendant's paper also featured editorials in favor of a county contract with the Humane Society.

On August 30, 1981, defendant published a letter from George Burgess, vice president of the Humane Society, on the editorial page of the *Port Huron Times Herald.* Burgess' letter was a reply to a previous letter to the editor by Dr. Raymond Kahn which had been published by defendant on August 18, 1981. Dr. Kahn's letter commended plaintiff Fred Hodgins for his conscientiousness in dealing with pound animals. Burgess' letter implied that plaintiffs sold animals to be used to train dogs for dog fights, stating:

Dog Pound animals are sold not only to hospi-

tals (which are not necessarily humane) but to anyone with Mr. Hodgins' asking price.

And:

Some of the more frail dogs and some of the kittens and cats end up as "training animals" to be killed by dogs being trained for the many dog fights staged weekly in the state.

Burgess' letter also referred to several types of inhumane experiments to which research animals were supposedly subject.[1]

On September 9, 1981, the St. Clair County

[1] The entire letter written by Burgess and published by defendant read:

In spite of his many prestigious titles, Dr. R. H. Kahn, Director of Research, Henry Ford Hospital, in his letter of Aug. 8 failed to convince me that use of animals in research (vivisection) can be considered humane by any stretch of the imagination. Dog Pound animals are sold not only to hospitals (which are not necessarily humane) but to anyone with Mr. Hodgins' asking price.

Many of these animals end their lives in closed steel pens into which are sprayed daily hundreds of times the recommended dosages of all types of chemicals (fire extinguisher contents, hair sprays, paint etc.) simply to find the dose considered lethal. Some of the more frail dogs and some of the kittens and cats end up as "training animals" to be killed by dogs being trained for the many dog fights staged weekly in the state. Dr. Kahn alludes to the luxurious accommodations and protection afforded these animals prior to brutal and barbaric torture to which they are submitted. My concern lies with the suffering they endure during and after the "testing".

At a recent meeting of the Board of Commissioners of Macomb County, our immediate neighbor to the south, a presentation was made by a Michele Dodman, president of Cruelty Free Living, Inc., and her mother, relating to the use and abuse to which animals are submitted in the name of research. Ms. Dodman detailed and documented cases of rabbits, with both front and rear legs tied to prevent scratching, having eye makeup etc., poured daily into the eyes to see how long it takes for the cosmetic to destroy the eye; dogs being dropped eight floors to simulate auto crashes, etc. When the commissioners were informed that Macomb pound animals were being sold for this research, the chairman stated publicly he had no idea this was being done. Subsequently, and much to their credit, the

Board of Commissioners decided to terminate plaintiffs' contract with the county and to reinstate the Humane Society's animal shelter contract. St. Clair County terminated the Humane Society's contract and resumed housing stray animals in the county dog pound in 1984, but has refused to resume the previous county contract with plaintiffs. Plaintiffs lost approximately 1,200 dogs per year because of the loss of the St. Clair County contract and have been unable to supply their full demand for research animals due to the loss of the contract. Upon request by plaintiffs' attorney, defendant published a retraction letter written by George Burgess in November, 1981.

Plaintiffs filed suit against defendant and George Burgess for libel in two separate actions which were consolidated and transferred to St. Clair Circuit Court on September 4, 1983. The court granted plaintiffs a default judgment against Burgess on January 6, 1986.

board voted unanimously to end the sale of pound animals for research.

The Macomb Daily of July 25 covered this meeting and substantiates these facts.

Hopefully, St. Clair County Commissioners will vote to reinstate the contract with the Humane Society to house county animals (not take over the Dog Pound, as Dr. Kahn erroneously stated). In view of the overwhelming county-wide support for this contract, it seems inconceivable they could decide otherwise, research not withstanding [sic].

Obviously, Dr. Kahn and Henry Ford Hospital both have a very vested interest in this matter (now that their biggest supplier, Macomb County, has decided to no longer participate in this cold-blooded ritual, and animals for torture are in short supply) and the county commissioners should be well aware of this vested interest and in no way should it influence their votes on reinstatement of the contract with Humane Society.

Cruelty is cruelty, doctor, especially when it is perpetrated on an animal some county resident has dropped off at a pound, never suspecting the gruesome end to which his pet might come.

George Burgess
Jeddo

Defendant moved for summary judgment on the basis that the letter was not actionable because it was an expression of opinion and because the letter was protected by the "public interest" privilege, which requires that the plaintiff show actual malice to impose liability on the defendant. The trial court denied the motion, finding that the Burgess letter was not protected opinion as a matter of law, whether readers interpreted the letter's language in a defamatory sense was a fact question for the jury, and whether defendant acted with actual malice was also a fact question for the jury.

The jury returned a verdict in favor of plaintiffs. The jury answered specific questions on a special verdict form. Specifically, the jury found that the statements were of and concerning both plaintiffs, the Burgess letter was false in a material respect which tended to harm plaintiffs' reputation, and defendant published the letter knowing that it was false or with reckless disregard as to falsity, i.e., with actual malice. The jury found that plaintiffs sustained actual damages of $130,000 and exemplary damages of $70,000. The jury found that defendant did not act with bad faith or ill will, but that George Burgess did. Thus, the jury found that Burgess was liable to plaintiffs for $70,000 in exemplary damages. The court entered a judgment holding defendant jointly and severally liable with George Burgess to plaintiffs for $130,000 in actual damages.

Defendant moved for judgment notwithstanding the verdict or for a new trial, which the court denied.

On January 8, 1987, plaintiffs moved to correct the court's judgment pursuant to MCL 2.612(C)(1)(f) to add exemplary damages in favor of plaintiffs against defendant Times Herald Com-

pany. Plaintiffs argued that the standard for exemplary damages was actual malice instead of bad faith or ill will, so plaintiffs were entitled to exemplary damages because defendant was found to have acted with actual malice. The court denied plaintiffs' motion to correct the judgment.

Defendant raises a number of issues, which we will discuss in order.

### I. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE GROUND THAT THE BURGESS LETTER WAS CONSTITUTIONALLY PROTECTED EXPRESSION OF OPINION?

A motion brought under MCR 2.116(C)(10) tests whether there is factual support for plaintiff's claim. A court, in deciding such a motion, must consider the pleadings, affidavits, depositions, admissions, and documentary evidence available to it and give the nonmoving party the benefit of every reasonable doubt. The motion must not be granted unless the court is satisfied that it would be impossible to support the claim at trial because of some deficiency which cannot be overcome. *Dzierwa v Michigan Oil Co,* 152 Mich App 281, 284; 393 NW2d 610 (1986).

The United States Supreme Court has held that expressions of opinion are protected from defamation actions. *Gertz v Robert Welch, Inc,* 418 US 323, 339; 94 S Ct 2997; 41 L Ed 2d 789 (1974). However, there is no constitutional protection given to false statements of fact, so false statements of fact are not protected from libel suits. *Gertz,* 418 US 340.

Direct accusations or inferences of criminal conduct or wrongdoing are not protected as opinion. *Church of Scientology of California v Flynn,* 744 F2d 694, 698 (CA 9, 1984); *Cianci v New Times Publishing Co,* 639 F2d 54, 65 (CA 2, 1980); *Buck-*

*ley v Littell,* 539 F2d 882, 896 (CA 2, 1976), cert den 429 US 1062 (1977). There is no First Amendment protection for "a charge which could reasonably be understood as imputing specific criminal conduct or other wrongful acts." *Cianci,* 639 F2d 64.

Defendant contends that the wording of the Burgess letter was merely strongly worded opinion and did not accuse plaintiffs of any crimes. Exaggerated language used to express opinion, such as "blackmailer," "traitor" or "crook," does not become actionable merely because it could be taken out of context as accusing someone of a crime. *Greenbelt Cooperative Publishing Ass'n v Bresler,* 398 US 6, 14; 90 S Ct 1537; 26 L Ed 2d 6 (1970).

However, here defendant published a letter which implied that plaintiffs sell dogs to persons who use them for dog fights, a state crime under MCL 750.49; MSA 28.244. It is also a federal crime to sell or transport animals for use in dog fights. 7 USC 2156(b). Sale of animals for dog fighting is grounds for revocation of plaintiffs' federal and state licenses. 7 USC 2149; MCL 287.390(1)(c); MSA 12.580(30)(1)(c). The Burgess letter states that plaintiffs sell to anyone, and then follows with the statement that some of these animals are used for dog fighting. This is not the same as calling someone a "blackmailer" or a "crook" in a strongly worded opinion statement. The Burgess letter's language accuses or strongly implies that plaintiffs are involved in illegal or wrongful conduct involving dog fighting and moves across the line dividing strongly worded opinion from accusation of crime. These statements are not protected by the First Amendment from libel suits.

The Burgess letter was not a statement of opinion which is protected from defamation suits by the First Amendment. Thus, the court did not err

in denying defendant's motion for summary judgment on this ground.

## II. WAS ACTUAL MALICE OR NEGLIGENCE THE PROPER STANDARD OF CARE TO APPLY IN THIS CASE?

Defendant claims that the "actual malice" standard applies to this case and that there was insufficient evidence of actual malice to support the jury's verdict. In response, plaintiffs argue that a negligence, rather than an actual malice, standard applies, relying on *Rouch v Enquirer & News of Battle Creek,* 427 Mich 157; 398 NW2d 245 (1986). In *Rouch,* the Court held that there was no longer a qualified privilege protecting defendants in a libel suit where the plaintiff is a private person in a matter of public concern. The former qualified privilege required that the plaintiff prove that the defendant acted with actual malice, i.e., knowing of falsity or with reckless disregard for the truth. After *Rouch,* the plaintiff need not prove actual malice, but only negligence. *Rouch, supra,* p 187. *Rouch* was released one month after the trial in the instant case ended. Defendant claims that *Rouch* should not be applied retroactively, while plaintiffs argue that it should.

> The general rule is that decisions of Michigan appellate courts are to be given full retroactivity unless limited retroactivity is preferred where justified by (1) the purpose of the new rule, (2) the general reliance upon the old rule, and (3) the effect of full retroactive application of the new rule on the administration of justice. [*King v General Motors Corp,* 136 Mich App 301, 306; 356 NW2d 626 (1984), lv den 422 Mich 871 (1985).]

We feel that none of these considerations are present to prevent *Rouch* from being applied retroactively in the instant case. In anticipation of

*Rouch,* plaintiffs argued below that a negligence standard should apply. Indeed, this Court has already applied *Rouch* retroactively. *Deitz v Wometco West Michigan TV, Inc,* 160 Mich App 367, 375; 407 NW2d 649 (1987). Thus, defendant is not protected by the qualified "public interest" privilege.

Defendant also contends that actual malice is the standard because plaintiffs are limited purpose public figures. Although *Rouch* held that the limited "public interest" privilege no longer applies to private persons, it did not disturb the rule that a limited privilege does still protect defendants where the plaintiff is a public figure or limited-purpose public figure. Public figures may not recover damages for a defamatory falsehood relating to issues giving rise to their public status unless they prove that those statements were made with actual malice. *Lins v Evening News Ass'n,* 129 Mich App 419, 432; 342 NW2d 573 (1983); *VandenToorn v Bonner,* 129 Mich App 198, 203; 342 NW2d 297 (1983), lv den 421 Mich 864 (1985).

Defendant did raise this issue in its answer to plaintiffs' complaint, but did not raise it at all before trial or at trial. In addressing the issue, we find that plaintiffs were not limited-purpose public figures. Defendant contends that plaintiffs were limited-purpose public figures because of the controversy over the Humane Society contract. A private person becomes a limited-purpose public figure when he voluntarily injects himself or is drawn into a particular public controversy and assumes a special prominence in the resolution of that public controversy. *Lins, supra,* p 432; *VandenToorn, supra,* p 205. However, a private individual is not automatically transformed into a limited-purpose public figure merely by becoming involved in or associated with a matter that at-

tracts public attention; the court must look to the nature and extent of the individual's participation in the controversy. *Wolston v Reader's Digest Ass'n, Inc,* 443 US 157, 166-167; 99 S Ct 2701; 61 L Ed 2d 450 (1979).

There is no factual support for defendant's contention that plaintiffs are limited-purpose public figures. There was a controversy concerning both whether the county should maintain a separate animal shelter or should enter into a new contract with the Humane Society and whether pound animals should be made available for animal research. However, there is no indication that plaintiffs voluntarily injected themselves or were drawn into the controversy so as to assume a special prominence in the resolution of these public questions. The only previous mention of plaintiffs in this context in defendant's newspaper appears to be Dr. Kahn's August 18, 1981, letter. Defendant's editorial page editor admitted that Hodgins Kennels was not a household word in the area. Although plaintiffs did write letters to the editor, none of these were published in the *Port Huron Times Herald,* and there is no indication that these letters appeared in St. Clair County or were related to the Humane Society controversy. Although plaintiffs did have a county contract, receipt of public funds alone is not sufficient to make a private person a public figure. *Hutchinson v Proximire,* 443 US 111, 136; 99 S Ct 2675; 61 L Ed 2d 411 (1979); *VandenToorn, supra,* pp 205, 206.

### III. WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S FINDING THAT DEFENDANT ACTED WITH ACTUAL MALICE?

Even if actual malice was the proper standard, we find that there was sufficient evidence of actual malice. Where there is competent evidence to

support the finding of a jury, its verdict should not be set aside. *Willoughby v Lehrbass,* 150 Mich App 319, 343; 388 NW2d 688 (1986). Circumstantial evidence and inference may be used to prove the actual malice necessary to defeat a conditional privilege. *Steadman v Lapensohn,* 408 Mich 50, 55; 288 NW2d 580 (1980), reh den 408 Mich 1109 (1980).

Plaintiffs presented strong circumstantial evidence indicating that defendant published with actual malice. The publisher of the *Port Huron Times Herald* was a strong supporter of the Humane Society, and defendant's newspaper ran an extensive fund-raising drive for the Humane Society. Editor Lyons was aware that the Humane Society was trying to regain the county contract, and wrote editorials favoring a Humane Society contract. Lyons knew that the references to Hodgins in the letter were to plaintiffs and that plaintiffs would lose business if the county contract went to the Humane Society. Lyons admitted that the Burgess letter stated that plaintiffs sold animals to anyone with the asking price, including those who were involved in dog fights, and that he knew that dog fighting was a crime. Lyons testified that he normally verifies accusations of criminal activity which are contained in letters sent for publication as letters to the editor and that references to crimes were not uncommon in these letters. Lyons admitted that he knew of no criminal charges pending against plaintiffs, that he did not check into whether plaintiffs sold dogs to anyone with the asking price or sold dogs for dog fights, and that he had no reason to believe that plaintiffs sold animals for dog fights. Lyons did not take any action to check out or verify any part of the Burgess letter. Thus, despite Lyons' statements denying that he acted with actual malice, there

was sufficient evidence showing that defendant acted with actual malice. It is not the function of this Court to resolve conflicts in the evidence or to pass on the credibility of witnesses. *Butcher v Dep't Natural Resources,* 158 Mich App 704, 707; 405 NW2d 149 (1987).

Here, there was sufficient evidence from which the jury could conclude that defendant acted with actual malice. The evidence also showed that defendant acted negligently. Therefore, since negligence is the proper standard to apply in reviewing this case, no error requiring reversal occurred even if the evidence failed to show actual malice.

### IV. DID THE TRIAL COURT COMMIT ERROR IN INSTRUCTING THE JURY?

Defendant claims the court failed to properly instruct the jury on actual malice, reckless disregard, and opinion. If a jury instruction is erroneous or inadequate, reversal is required only where failure to reverse would be inconsistent with substantial justice. *United Gratiot Furniture Mart, Inc v Michigan Basic Property Ins Ass'n,* 159 Mich App 94, 103; 406 NW2d 239 (1987). We disagree with defendant that error requiring reversal occurred when the court reread SJI2d 118.05 after the jury requested the "legal interpretation" of "reckless disregard." Because negligence was the proper standard, failure to reverse would not be inconsistent with substantial justice. Furthermore, contrary to defendant's contention, the court did instruct the jury that actual malice depended on defendant's state of mind. Finally, it was not error for the court not to instruct the jury on opinion, as the court had previously properly ruled that, as a matter of law, the letter was not protected as an opinion.

V. WAS THE JURY'S FINDING THAT PLAINTIFFS'
ACTUAL DAMAGES WERE PROXIMATELY CAUSED BY
DEFENDANT'S PUBLICATION OF THE BURGESS LETTER
AGAINST THE GREAT WEIGHT OF THE EVIDENCE?

Where there is competent evidence to support the finding of the jury, its verdict should not be set aside. *Willoughby, supra,* p 343. Defendant argues that the jury's finding that the Burgess letter was a proximate cause of plaintiff's loss of contract was against the great weight of the evidence. We disagree.

There were fifteen St. Clair County commissioners in 1981. Commissioner Al Wnuk testified that his constituents were concerned and angry over the Burgess letter and that he received over a hundred phone calls regarding the letter. Wnuk testified that at least four county commissioners had been influenced by the letter and that the letter had a very strong impact on the board of commissioners. Wnuk also testified that it was more expensive for the county to contract with the Humane Society, so the county resumed running its own dog pound in 1984, but avoided dealing with plaintiffs due to the controversy. Paul Gigmante testified that a county official contacted him in an effort to supply research animals to Henry Ford Hospital without dealing with plaintiffs.

Defendants presented the testimony of five county commissioners who testified that they voted for the Humane Society contract solely for financial reasons and that the Burgess letter did not affect their voting.

As stated earlier, it is not a function of this Court to resolve conflicts in evidence or to pass on the credibility of witnesses. *Butcher, supra,* p 707. Although the testimony of plaintiffs' and defendant's witnesses conflicts, plaintiffs did present sufficient evidence showing that the Burgess letter

proximately caused plaintiffs' loss of the county contract. The jury's finding was not against the great weight of the evidence.

Defendant also claims the court erred in permitting Wnuk to testify over defendant's hearsay objection. Defendant claims that Wnuk's testimony regarding the contents of phone calls received from constituents and his conversations with county commissioners was hearsay. We disagree, as Wnuk was not using these conversations to prove the truth of the matter asserted—that plaintiffs sold animals to people who tortured them. Rather, this testimony was used to show the state of mind of the constituents and county commissioners. Thus, the testimony was admissible. MRE 801(c).

## VI. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION TO SEVER ITS CASE FROM THE CASE AGAINST DEFENDANT GEORGE BURGESS?

MCR 2.505(B) allows a trial court to sever trials to avoid prejudice or for convenience, expedition, or economy:

> For convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, the court may order a separate trial of one or more claims, cross-claims, counterclaims, third-party claims, or issues.

The decision to sever trials is within the trial judge's discretion and should be ordered only upon a most persuasive showing. *Dep't of Treasury v Campbell,* 161 Mich App 526, 532; 411 NW2d 722 (1987).

Defendant presents no evidence that it was prejudiced by the claim against it being tried before the same jury as the claim against Burgess. The

jury's verdicts are different for each defendant. Any potential prejudice to defendant caused by the presence of of the Burgess action was cured by the court's instruction:

> Now, in this case, as I indicated earlier, a default has been entered with respect to defendant George Burgess. This means that you must consider George Burgess libel [sic] to the plaintiffs and the only determination you need to make with respect to Mr. Burgess is the amount of plaintiffs' damages.
>
> Now, the fact of Mr. Burgess' default should have no bearing on your consideration of the evidence concerning the defendant Times Herald Company. Defendant Times Herald Company contests both liability and damages.

Burgess played a very minor part in the trial, which was primarily devoted to the question of defendant's liability. Therefore, convenience, economy, and expedience required that both the claim against defendant and the determination of damages attributable to Burgess be tried at the same time. The trial court did not err by denying defendant's motion to sever.

### VII. WAS THE JURY'S FINDING THAT THE BURGESS LETTER WAS OF AND CONCERNING PLAINTIFFFF JAN HODGINS SUPPORTED BY THE EVIDENCE?

The jury's finding that the letter was of and concerning Jan Hodgins was supported by the evidence.

Defendant's editorial page editor, Lyons, testified that he knew that the reference to Mr. Hodgins in the Burgess letter referred to plaintiffs' business, Hodgins Kennels. Both Fred and Jan Hodgins were joint owners of Hodgins Kennels. Jan Hodgins was actively working in the Hodgins Kennels

business for twenty-two years and was a partner in the business in 1981. When plaintiffs incorporated Hodgins Kennels in 1982, Jan Hodgins became a fifty percent shareholder in the business. The Burgess letter clearly referred to Hodgins Kennels' business of buying and selling animals for research.

## VIII. DID THE TRIAL COURT ERR IN REFUSING TO CORRECT THE JUDGMENT TO INCLUDE AN AWARD OF EXEMPLARY DAMAGES TO PLAINTIFFS AGAINST DEFENDANT TIMES HERALD COMPANY?

Plaintiffs argue that *Rouch* implicitly changed the standard for the collection of exemplary damages against a libel defendant from bad faith or ill will to actual malice.

The Michigan Supreme Court held in 1984 that exemplary damages in a libel case can be awarded only if the plaintiff proves that the defendant published with common law malice, which is bad faith or ill will. *Peisner v Detroit Free Press Inc,* 421 Mich 125, 127, 136; 364 NW2d 600 (1984).

Plaintiffs contend that the *Rouch* decision implicitly overruled the *Peisner* decision, making exemplary damages available if the plaintiff merely proves actual malice. Although the *Rouch* decision does mention the *Peisner* decision, it never overrules *Peisner* or redefines the rules for exemplary damages in libel cases. *Rouch, supra,* p 183. Therefore, exemplary damages can be awarded in a libel case only if plaintiff proves that defendant acted with bad faith or ill will.

The jury found that defendant did not publish with bad faith or ill will, so the court did not err in denying plaintiffs' motion to amend the judgment.

Affirmed.