602 N.W.2d 233 (1999)
237 Mich. App. 1
Jack KEVORKIAN, Plaintiff-Appellee,
v.
AMERICAN MEDICAL ASSOCIATION, M. Roy Schwarz, M.D., James S. Todd, M.D., Mark T. Wolfe and Kirk B. Johnson, Defendant-Appellants, and
Michigan State Medical Society and William E. Madigan, Defendants.
Jack Kevorkian, Plaintiff-Appellee,
v.
American Medical Association, M. Roy Schwarz, M.D. James S. Todd, M.D., Mark T. Wolfe and Kirk B. Johnson, Defendants, and
Michigan State Medical Society and William E. Madigan, Defendants-Appellants.
Docket Nos. 203985, 204049.
Court of Appeals of Michigan.
Submitted January 6, 1999, at Detroit.
Decided August 6, 1999, at 9:05 a.m.
Released for Publication November 2, 1999.
*235 Fieger, Fieger & Schwartz, P.C. (by Geoffrey Nels Fieger and William J. McHenry), Southfield, for Jack Kevorkian.
Butzel Long (by Richard E. Rassel, James E. Stewart, and Laurie J. Michelson) Detroit, and Sidley & Austin (by Jack R. Bierig, Richard J. O'Brien, and Eric S. Mattson), Chicago, IL, for American Medical Association and others.
Kerr, Russell and Weber, P.L.C. (by Richard D. Weber, Patrick McLain, and Patrick J. Haddad), Detroit, for Michigan State Medical Society and William E. Madigan.
Before: MARKMAN, P.J. and JANSEN and J.B. SULLIVAN[*], JJ.
*234 J.B. SULLIVAN, J.
Defendants American Medical Association (AMA); M. Roy Schwarz, M.D.; James S. Todd, M.D.; Mark T. Wolfe; Kirk B. Johnson; Michigan State Medical Society (MSMS); and William E. Madigan were granted leave to appeal from the trial court's denial of their motions for summary disposition pursuant to MCR 2.116(C)(8). We reverse and remand.
On February 9, 1996, plaintiff Jack Kevorkian, possibly the best known and most controversial proponent of assisted suicide, filed suit against defendants, alleging that he had been defamed. Specifically, plaintiff claimed that on October 10, 1995, defendant Johnson, acting as general counsel on behalf of defendant AMA, published a letter to Michigan Attorney General Frank Kelley and to defendants Madigan and MSMS stating that plaintiff "perverts the idea of the caring and committed physician," "serves merely as a reckless instrument of death," "poses a great threat to the public," and engages in "criminal practices." Plaintiff further alleged that defendants Todd and Wolfe, defendant AMA's executive vice president and public information officer, respectively, issued a news release alleging "continued killings" and "criminal activities" by plaintiff. Plaintiff also alleged that defendant Schwarz, defendant AMA's vice president for professional standards, published false and defamatory statements to the media calling plaintiff "a killer." Finally, plaintiff alleged that defendants MSMS and its executive director, defendant Madigan, published and distributed the statements made by the other defendants.
All defendants moved for summary disposition, arguing that the statements were constitutionally protected expressions of *236 opinion. Plaintiff argued that false statements of fact and accusations of criminal conduct are not constitutionally protected as opinions. On May 21, 1997, the trial court entered its opinion and order denying defendants' motions. The trial court concluded that the statements at issue were statements of fact and therefore not constitutionally protected, and that they constituted libel per se because referring to plaintiff as both a criminal and a killer in the same document could lead to the inference that plaintiff was a murderer.
This Court reviews a trial court's decision regarding a motion for summary disposition de novo. Hawkins v. Mercy Health Services, Inc., 230 Mich.App. 315, 324, 583 N.W.2d 725 (1998). MCR 2.116(C)(8) permits summary disposition when a plaintiff has failed to state a claim on which relief can be granted, and therefore determines whether the plaintiff's pleadings allege a prima facie case. Garvelink v. Detroit News, 206 Mich.App. 604, 607, 522 N.W.2d 883 (1994). The motion may be granted only where the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. Id., p. 608, 522 N.W.2d 883. When addressing defamation claims, appellate courts must make an independent examination of the record to ensure against forbidden intrusions into the field of free expression. Ireland v. Edwards, 230 Mich.App. 607, 613, 584 N.W.2d 632 (1998). Summary disposition is an essential tool in the protection of First Amendment rights. Id., n. 4.
A communication is defamatory if, considering all the circumstances, it tends to so harm the reputation of an individual as to lower that individual's reputation in the community or deter third persons from associating or dealing with that individual. Ireland, supra, p. 619, 584 N.W.2d 632, citing Sawabini v. Desenberg, 143 Mich.App. 373, 379, 372 N.W.2d 559 (1985). However, not all defamatory statements are actionable. Ireland, supra, p. 614, 584 N.W.2d 632. For example, the United States Supreme Court has rejected the idea that all statements of opinion are protected and has directed that the defamatory statement must be provable as false to be actionable. Id., p. 616, 584 N.W.2d 632, citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 17-20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). In Milkovich, the Court by way of example distinguished the actionable statement, "In my opinion Mayor Jones is a liar," from the nonactionable statement, "In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin." Ireland, supra, p. 616, 584 N.W.2d 632. The Court apparently intended to distinguish between an objectively verifiable event in the former case and a subjective assertion in the latter. Id., citing Milkovich, supra, pp. 21-22, 110 S.Ct. 2695. Similarly, in Ireland, we concluded that the statement that plaintiff Ireland was not a fit mother was necessarily subjective and was therefore not actionable. Id., p. 617, 584 N.W.2d 632. We note, however, that a statement may be necessarily subjective and also be objectively verifiable. A statement that plaintiff is a murderer, which the trial court found to be implied from defendant's statements, falls into that category.
The Supreme Court has also determined that defamatory statements, in order to be actionable, must state actual facts about a plaintiff, thereby protecting statements that, although factual on their face and provable as false, could not reasonably be interpreted as stating actual facts about the plaintiff. Ireland, supra, p. 617, 584 N.W.2d 632, citing Milkovich, supra, pp. 16-17, 110 S.Ct. 2695, and Hustler Magazine, Inc v. Falwell, 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). Generally included as such protected speech are parodies, political cartoons, and satires. Ireland, supra, p. 617, 584 N.W.2d 632, citing Garvelink, supra, p. 610, 522 N.W.2d 883. In Ireland, we concluded that the statement that Ireland "never" spent time with her child was patently *237 false and an obvious expression of disapproval of the amount of time Ireland spent with her child, but that no reasonable person would believe the statement stated actual facts about Ireland. Ireland, supra, p. 619, 584 N.W.2d 632. However, it is also clear that two completely conflicting statements can "state actual facts" about an individual. In other words, plaintiff's acts of assisted suicide, for example, can be described as murder or mercy, and any reasonable person could understand that both or neither could be taken as stating actual facts about plaintiff.
The Supreme Court has further recognized that statements must be viewed in context to determine whether they are capable of defamatory interpretation, or whether they constitute no more than "rhetorical hyperbole" or "vigorous epithet." Ireland, supra, p. 618, 584 N.W.2d 632, citing Greenbelt Cooperative Publishing Ass'n, Inc v. Bresler, 398 U.S. 6, 14, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970). Thus, some expressions of opinion are protected. Ireland, supra, p. 614, 584 N.W.2d 632, citing Milkovich, supra, pp. 18-20, 110 S.Ct. 2695; Hodgins v. Times Herald Co., 169 Mich.App. 245, 253, 425 N.W.2d 522 (1988), citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 339, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). For example, in Greenbelt, supra, a real estate developer was involved in simultaneous negotiations with the city of Greenbelt, Maryland. Because the developer was both selling land to the city and seeking a zoning variance from the city, a local newspaper printed articles reporting that community members described his bargaining position as "blackmail." The Supreme Court rejected the developer's argument that the newspaper effectively charged him with the crime of blackmail, and concluded that "even the most careless reader must have perceived that the word [blackmail] was no more than rhetorical hyperbole...." Ireland, supra, p. 618, 584 N.W.2d 632, citing Greenbelt, supra, p. 14, 90 S.Ct. 1537. In Hodgins, supra, p. 254, 425 N.W.2d 522, referring to Greenbelt, supra, we noted that "[e]xaggerated language used to express opinion, such as `blackmailer,' `traitor' or `crook,' does not become actionable merely because it could be taken out of context as accusing someone of a crime." Into this category, we would place statements that are both necessarily subjective and objectively verifiable, and statements that both do and do not state actual facts about a person.
Statements that are not protected and therefore are actionable include false statements of fact, i.e., those that state actual facts but are objectively provable as false, and direct accusations or inferences of criminal conduct. Hodgins, supra, p. 253, 425 N.W.2d 522. Language that accuses or strongly implies that someone is involved in illegal conduct crosses the line dividing strongly worded opinion from accusation of a crime. Id., p. 254, 425 N.W.2d 522. Indeed, this Court has stated that an accusation of the commission of a crime is defamatory per se, meaning that special harm need not be proved. Wilkerson v. Carlo, 101 Mich.App. 629, 632, 300 N.W.2d 658 (1980). Cf.1994 Det Col L R 61, 76-77, 100-112, and cases cited therein (while the doctrine of libel per se has some tangential relevance to the issue of defamatory meaning, in a strict sense it is most relevant to the requirements governing the pleading of damages).
Where a defendant's statements are not protected by the First Amendment, a plaintiff can establish a defamation claim by showing (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). Hawkins, supra, p. 325, 583 N.W.2d 725; Ireland, supra, p. 614, 584 N.W.2d 632. Where a public figure is *238 involved in a defamation case, the public figure must prove by clear and convincing evidence that the publication was a defamatory falsehood and was made with actual malice, i.e., with knowledge of falsity or with reckless disregard for the truth. Hawkins, supra, p. 331, n. 10, 583 N.W.2d 725, citing Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991); Garvelink, supra, p. 608, 522 N.W.2d 883, citing New York Times v. Sullivan, 376 U.S. 254, 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). A court may determine, as a matter of law, whether a statement is actually capable of defamatory meaning. Ireland, supra, p. 619, 584 N.W.2d 632. Where no such meaning is possible, summary disposition is appropriate. Id.
Further subtleties and refinements to the basic elements stated above have arisen as the "[t]wo competing legal regimes [of libel and constitutional law] collide...." Locricchio v. Evening News Ass'n, 438 Mich. 84, 88, 476 N.W.2d 112 (1991), cert. den. 503 U.S. 907, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992). In Hawkins, supra, p. 325, 583 N.W.2d 725, this Court noted that the public or private character of the speech must be considered. Regarding that, the Court in Locricchio stated that the United States Supreme Court "has most consistently interpreted the First Amendment to accord maximum protection to public speech about public figures ... [with a] special solicitude for speech of public concern." Id., pp. 118, 120, 476 N.W.2d 112 (citations omitted).
In Hawkins, supra, pp. 332-333, 583 N.W.2d 725, this Court discussed the "substantial truth doctrine," which states that a statement or defamatory implication need only be substantially accurate as opposed to being literally and absolutely accurate. See also Rouch v. Enquirer & News of Battle Creek (After Remand), 440 Mich. 238, 264, 487 N.W.2d 205 (1992), cert. den. 507 U.S. 967, 113 S.Ct. 1401, 122 L.Ed.2d 774, reh. den. 507 U.S. 1047, 113 S.Ct. 1891, 123 L.Ed.2d 507 (1993) (numerous courts have rejected claims of falsity when based on a misuse of formal legal terminology by nonlawyers). In Hawkins, supra, p. 334, 583 N.W.2d 725, this Court reiterated that the issues of falsity and fault were to be examined independently, so that whether the statement was made negligently or intentionally was independent of the question of material falsity, to which the substantial truth doctrine is applicable. Hawkins, supra, involved a suit for defamation by implication. This Court determined that such a cause of action exists in Michigan but only if the plaintiff proves that the defamatory implications are materially false. Id., p. 332, 583 N.W.2d 725.
In this case, we strongly emphasize that our conclusions are limited strictly to the facts of this case. See State Farm Mut. Automobile Ins. Co. v. Ruuska, 412 Mich. 321, 338, 314 N.W.2d 184 (1982); Haukland v. Muirhead, 233 Mich. 390, 397, 399, 206 N.W. 549 (1925); Monusko v. Postle, 175 Mich.App. 269, 277, 437 N.W.2d 367 (1989). Second, while we are aware of plaintiff's recent convictions of second-degree murder and delivering a controlled substance without a medical license, those convictions do not affect our instant review of the trial court's 1997 decision to deny defendants' motions for summary disposition in plaintiff's defamation action. Finally, we note without comment that defendant AMA's letter to the Attorney General, in addition to containing the allegedly defamatory statements, also states, "it is ethical for physicians to provide effective pain medication even if the medication may have the side effect of suppressing respiration and hastening death." (Emphasis added.)
In this case, there is no dispute that plaintiff is a public figure. Indeed, more than most in recent memory, plaintiff "voluntarily expose[d] [himself] to the risk of defamation by injecting [himself] into public controversy." Locricchio, supra, p. 119, 476 N.W.2d 112. Additionally, the *239 parties do not dispute that the issue of assisted suicide is a matter of public concern. Therefore, we must accord maximum protection to defendants' speech about plaintiff, with "special solicitude" for their speech on a matter of such urgent public concern. Locricchio, supra.
However, even without that maximum protection and special solicitude, we hold as a matter of law that the alleged defamatory statements, taken individually or together, taken in or out of context, do not, by implication or otherwise, considering all the circumstances, so harm plaintiff's reputation as to lower that reputation in the community or to deter third persons from associating with him. Ireland, supra, p. 619, 584 N.W.2d 632. We find that, with respect to the issue of assisted suicide, plaintiff is virtually "libel proof," which has been defined as "a rather loose-woven legal conception of the federal courts." Brooks v. American Broadcasting Co. Inc., 932 F.2d 495, 500 (C.A.6, 1991). In Brooks, the Court quoted from an opinion of the Second Circuit Court of Appeals to further define the concept as follows: "`[I]n those instances where an allegedly libelous statement cannot realistically cause impairment of reputation because the person's reputation is already so low ... the claim should be dismissed so that the costs of defending against the claim of libel, which can themselves impair vigorous freedom of expression, will be avoided.'" Id., p. 501, quoting from Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 303 (C.A.2, 1986), cert. den. 479 U.S. 1091, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987). In Brooks, the Court noted that, while criminal convictions are the well-worn path to achieving libel-proof status, a specific reputation obtained through means such as newspapers and magazines also will suffice. Id. See also Mattheis v. Hoyt, 136 F.Supp. 119 (W.D.Mich., 1955) (even a partially untrue statement, published after a conviction of murder, did not damage the plaintiff's reputation except possibly among other inmates); Noth v. Evening News Ass'n, 338 Mich. 359, 362, 61 N.W.2d 1 (1953) (the plaintiff's admission amply justified the defendant's stating that the plaintiff was guilty of murder though convicted only of manslaughter). In short, plaintiff's reputation in the community, if not the nation, is such that the effect of more people calling him either a murderer or a saint is de minimis. Brooks, supra, p. 501. Further, we conclude that any effect of defendants' statements, not unlike all the other publicity that generally "spells plaintiff's name right," would be just as likely to result in third persons seeking plaintiff out rather than deterring them from associating with plaintiff. Ireland, supra.
In light of our conclusion that the implication that plaintiff is a murderer, which arises from the statements forming the basis of plaintiff's complaint, is not defamatory, plaintiff's other arguments are moot. Notwithstanding plaintiff's creativity at oral argument, we decline plaintiff's invitation to hold as a matter of law that all accusations of criminal activity are automatically defamatory (thereby eliminating the need for that determination by the trial court in the first instance), and we find no merit in plaintiff's related claim that a finding in favor of defendants would in essence preclude criminal prosecution under M.C.L. § 750.370; MSA 28.602.
Even if we were to conclude that defendants' statements are defamatory, state objectively verifiable facts about plaintiff, and are provable as false, we would find that with respect to this highly public plaintiff and the facts of this case, which are nothing if not matters of public concern, because the statements also are necessarily subjective and could also be reasonably understood as not stating actual facts, they are either nonactionable rhetorical hyperbole or must be accorded the special solicitude reserved for protected opinion. Locricchio, supra.
Plaintiff's very celebrity (or notoriety, if you will) derives exclusively from *240 his participation in a national debate over the propriety of assisted suicide whether it is more akin to an act of mercy or to an act of homicide. Having exercised his leadership on behalf of one side of this debate, and having contributed substantially to the awareness of the American people of this debate, it is now more than a little disingenuous for plaintiff to accuse those on the opposite side of this debate of defamation. Such alleged defamation is grounded here in nothing more than the fact that defendants are in disagreement with plaintiff's position: they would characterize plaintiff's conduct differently than plaintiff would characterize it. Where an alleged defamatory statement, occurring in the course of a public debate initiated or perpetuated by plaintiff himself, is focused precisely on a matter lying at the heart of the debate, it is hard to understand how tort law could be implicated. Indeed, it is hard to imagine anything that could more effectively chill legitimate public debate.
Reversed and remanded for entry of judgment for defendants. We do not retain jurisdiction.
MARKMAN, P.J., concurred.
JANSEN, J. (dissenting).
I respectfully dissent and would affirm the trial court's order denying defendants' motions for summary disposition.
The alleged defamatory statements have been fully set forth by the majority. The trial court ruled that the gravamen of the statements is that plaintiff is a criminal who kills his victims. The trial court found that the allegation that plaintiff is a criminal and a killer could lead to the inference that he is a murderer, and that such an allegation constitutes libel per se. The trial court went on to rule that the statements are not protected by the First Amendment, and thus denied defendants' motions for summary disposition under MCR 2.116(C)(8).
A defamatory statement is traditionally defined as one that tends to so harm the reputation of persons so as to lower them in the estimation of the community or to deter others from associating or dealing with them. Locricchio v. Evening News Ass'n, 438 Mich. 84, 115, 476 N.W.2d 112 (1991). A cause of action for defamation includes four elements: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher,[1] and (4) either actionability of the statement regardless of special harm or the existence of special harm caused by the publication. Id. at 115-116, 476 N.W.2d 112.
This case essentially turns on whether the statements made by defendants are held to be expressions of opinion that are protected from a defamation action or are held to be false statements of fact that are not protected from a defamation action. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); Ireland v. Edwards, 230 Mich.App. 607, 616, 584 N.W.2d 632 (1998). Further, this Court has held that direct accusations or inferences of criminal conduct or wrongdoing are not protected as opinion. Hodgins v. Times Herald Co., 169 Mich.App. 245, 253, 425 N.W.2d 522 (1988). Additionally, an accusation of a commission of a crime is defamatory per se, meaning that it is actionable without proof of special harm or loss of reputation. Wilkerson v. Carlo, 101 Mich.App. 629, 632, 300 N.W.2d 658 (1980); Tumbarella v. Kroger Co., 85 Mich.App. 482, 493, 271 N.W.2d 284 (1978); see also In re Thompson, 162 B.R. 748 (Bkrtcy.E.D.Mich., 1993) (the mother's allegation that the father had sexually *241 abused their minor daughter was defamation per se because the allegation effectively accused the father of committing a crime).
I find the present case to be similar to both Milkovich and Hodgins where the respective courts found the alleged defamatory statements to be actionable. First, the statements directed toward plaintiff are provable as false because plaintiff had not been convicted of any crime at the time they were made. Thus, whether plaintiff had engaged in criminal practices or was a killer when the statements were made are objectively verifiable events and can be proved as false. See Ireland, supra at 616, 584 N.W.2d 632.
Further, the statements are not merely strongly worded opinions, but actually accuse plaintiff of criminal wrongdoing (as a killer or murderer), and, thus, cross "the line dividing strongly worded opinion from accusation of crime." Hodgins, supra at 254, 425 N.W.2d 522. Similarly, in Milkovich, supra at 21, 110 S.Ct. 2695, the Supreme Court stated the following:
We are not persuaded that ... an additional separate constitutional privilege for "opinion" is required to ensure the freedom of expression guaranteed by the First Amendment. The dispositive question in the present case then becomes whether a reasonable factfinder could conclude that the statements in the [newspaper] column imply an assertion that petitioner Milkovich perjured himself in a judicial proceeding. We think this question must be answered in the affirmative. As the Ohio Supreme Court itself observed: "[T]he clear impact in some nine sentences and a caption is that [Milkovich] `lied at the hearing after ... having given his solemn oath to tell the truth.'" ... This is not the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that petitioner committed the crime of perjury. Nor does the general tenor of the article negate this impression.
Like Milkovich, the present case does not involve the "sort of loose, figurative, or hyperbolic language" tending to negate the impression that the defendants were seriously asserting that plaintiff is a murderer. Accordingly, the statements made by the defendants accusing plaintiff of being a killer and of engaging in criminal activities are not protected by the First Amendment.
Therefore, I would hold that the trial court did not err in denying defendants' motions for summary disposition under MCR 2.116(C)(8) because the pleadings, accepted as true, set forth an actionable defamation claim. Whether the statements are actually false, defamatory, and made with the knowledge that they were false or with reckless disregard of whether they were false is for a factfinder to determine.
I would affirm.
NOTES
[*] Former Court of Appeals judge, sitting on the Court of Appeals by assignment.
[1] It is not disputed that plaintiff is a public figure. In such a case, the public figure must prove that the statement was made with actual malice, that is, that it was made with knowledge that it was false or with reckless disregard of whether it was false or not. This showing of actual malice is subject to a "clear and convincing" standard of proof. Garvelink v. Detroit News, 206 Mich.App. 604, 608, 522 N.W.2d 883 (1994).